CASE   4.—ACTION BY C. N. CRAWFORD AGAINST THE
       CITY OF MURRAY.—April 27, 1910.

## City of Murray v. Crawford

Appeal from Calloway Circuit Court.

J. T. Hanberry, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

Frauds, Statute of—Sale of Land—Memorandum—"Party to be
    Charged."—Under the statute of frauds Ky. St. section 470,
    providing that no action shall be brought to charge any per-
    son on any contract for sale of land, unless·some memoran-
    dum or note thereof be in writing and signed by the "party
    to be charged," the vendor of real estate is the party to be
    charged, and not the purchaser; and hence a vendor, ver-
    bally agreeing to sell land to a city, cannot sue for breach
    of the agreement, though the city spread the acceptance of
    the agreement on the minutes.

COLEMAN & LINN and RAINEY T. WELLS for appellant.

SPEIGHT & DEAN for appellee.

Opinion of the Court by Judge Hobson—Reversing.

Pursuant to an ordinance regularly passed, an elec-
tion was held on November 6, 1906, in the city of Mur-
ray, by which the sense of the qualified voters was
taken as to whether the council should issue and sell
bonds of the city to the amount of $19,500 for the
purpose of purchasing, installing, and maintaining a
system of electric lights and waterworks in the city.
The requisite majority voted in favor of the propo-

sition. C. N. Crawford and J. J. Moore owned an electric light plant in the city, which they were operating in connection with their flour mill; that is, the same engine ran both, the electric light plant being in a brick building adjoining the millhouse. On May 6, 1906, before the bonds had been issued or sold, the council appointed a committee of three ''to make investigation into the possibility of buying the Murray electric light plant'' and to report at the next meeting. On May 10th the committee was continued, with further instructions to buy the plant at a price not exceeding $8,000. The committee had several conferences with Crawford, the result of which was a verbal agreement between the committee and Crawford, after consultation with his partner, by which the committee agreed to buy the electric light plant property for $8,000, and Crawford and Moore were to move their mill off the lot. The committee all say that they told Crawford that they had no money to buy with unless they sold the bonds, and that the arrangement was dependent upon the sale of the bonds. Crawford insists that it was a positive agreement and without condition. No writings of any kind were drawn or signed.

The committee on June 7th made this report to the council: ''To the City Council of Murray, Ky.: We, your committee on purchase of light plant, beg to make the following report: We purchased the machinery, and all wire and poles, including buildings and grounds, well, and right to use railroad track, and franchise to operate, for the price of $8,000, to have possession on demand. Resp'y, E. A. Hughes, J. B. Hay, Com.'' After spreading the report of the committee on its record, the council entered the following minute: ''Which report was re-

ceived, adopted, and trade ratified by all members present, being a quorum, and the committee discharged.'' It will be observed that the report closes with the words ''to have possession on demand.'' The committee and the members of the council say that these words were put there because they had not sold the bonds and did not know whether they could sell them, and the city would not need the property unless it could sell the bonds. After this Crawford and Moore moved their mill off the lot at an expense of something like $1,600, and lost the use of the mill during the time. The city was unable to sell the bonds and refused to take the property. Thereupon Crawford and Moore brought this suit against the city to recover damages for the breach of the contract.

In the circuit court there was evidence on behalf of the city that Crawford and Moore applied to the city authorities to know whether they must move their mill, and the city authorities told them they could not tell until they found a purchaser for the bonds, and that Crawford and Moore went on and moved the mill on their own judgment. There was no direction from the council for them to move the mill, and the functions of the committee were ended when they were discharged, so that the rights of the parties must depend on whether there was an enforceable contract by the council to buy the mill when the council adopted and ratified, on June 14th, the trade made by the committee. In the circuit court there was a verdict and judgment in favor of Crawford and Moore in the sum of $2,500. The city appeals.

The contract, as shown by the record, was one for the purchase of the lot, buildings, and electric light

plant for the lump sum of $8,000. The whole arrangement between Crawford and the committee was verbal. Crawford and Moore signed no writings of any kind until they signed the deed which they tendered with their petition in this case. They were the vendors of the property. The title was in them. The city was the proposed purchaser. The question we have is: Was the contract taken out of the statute of frauds by the written report signed by the committee and the adoption and ratification of that report by the council? The statute of frauds, among other things, provides: "No action shall be brought to charge any person * * * upon any contract for the sale of real estate, * * * unless the promise, contract, * * * or some memorandum or note thereof be in writing and signed by the party to be charged therewith, or by his authorized agent; but the consideration need not be expressed in the writing. * * *" Ky. St. section 470.

The question we have before us is: Who is "the party to be charged therewith," under this statute? May the vendor, who has signed no writing, sue the vendee upon tendering a deed, and recover damages for a breach of the contract, where the vendee has made a memorandum in writing of the contract. It is clear here that, if Crawford and Moore had refused to make the deed upon the city's tendering to them $8,000, they could have relied upon the statute, and said: "We have made no written contract for the sale of this land." If the contract is within the statute, then damages cannot be recovered for its breach; for to allow damages for the breach of a contract is only in another form to enforce it. It is true the courts will not allow a party to a contract to refuse to carry it out because it is within the stat-

ute of frauds, and retain the benefits which he has received under it. But the city here has received no benefits, and if the contract alleged is within the statute of frauds and unenforceable, no action by the terms of the statute "shall be brought to charge" the city thereon. So the question is: Is the contract void under the statute, because not in writing and signed by Moore and Crawford?

In McDowel v. Delap, 2 A. K. Marsh. 33, the plaintiff brought suit to recover the price of an interest in land which he averred he had sold the defendant, and proved by parol testimony the agreement on his part, but produced no written evidence to that effect. Holding that there could be no recovery, the court said: "Now, it is obvious that, according to the provisions of the statute against frauds and perjuries, a verbal agreement on the part of the plaintiff to transfer his interest in the salt well to the defendant was not obligatory. Such an agreement was, consequently, not a sufficient or valid consideration for the promise on the part of the defendant. * * * In order to support the count, it was certainly necessary to produce in evidence some memorandum in writing of the agreement, signed by the plaintiff or some one duly authorized by him." In Thomas v. Trustees of Harrodsburg, 3 A. K. Marsh. 298, 13 Am. Dec. 165, the trustees of Harrodsburg brought suit on a bond given for the price of certain lots of ground purchased of them. The defendant pleaded that the trustees had not signed or made any written contract of sale. In the replication they pleaded that a record of a sale of the lots was made in the books of the trustees. Disposing of the case on these facts, the court said: "The only matter of avoidance alleged in the replication is that of the lots

having been sold at public auction and an entry and record thereof made in the books of the trustees; but that matter, certainly, does not take the sale out of the statute against frauds and perjuries. The statute contains no exception of sales at auction, and the entry in the books of the trustees, unless signed by the trustees, or some person authorized by them, is not a compliance with the requisitions of the statute; and the replication contains no averment of the entry having been so signed. From both replication and plea, therefore, the sale must be admitted to be within the statute; and, as the bond is alleged to have been given for the price of the purchase made at that sale, the plea, under the statute authorizing the consideration of sealed writings to be gone into and impeached, contains a good and valid defense to the action of the trustees. No action at law or bill of equity can be maintained by either Bush or the representatives of Thomas on the sale; and it is a settled rule of the common law that a promise on which no action can be sustained forms no sufficient consideration for any other promise.'' It will be observed that in this case the purchaser had executed a bond for the price of the lots, and yet the bond was held unenforceable, because the vendor had signed no written memorial of the sale.

The question came up again in Murray v. Pate, 6 Dana, 335. In that case Pate made a verbal agreement to sell Tunstall a piece of land for $500, and Tunstall placed a $500 bank note in Murray's hands, to be delivered to Pate upon his executing a deed, provided a certain person should determine that the title was good. The person referred to pronounced the title good. The deed was made by Pate and tendered to Tunstall, but he refused to accept it and

notified Murray not to pay over the money. There-upon Pate sued. Holding that there could be no re-covery, the court said: "The contract by which this note, or its nominal or actual value, was payable, being for the sale of land and by parol, did not give a right of action to either party until a deed was not only made, but accepted. McDowel v. Delap, 2 A. K. Marsh. 33; Lewis v. Grimes, 7 J. J. Marsh. 336. And it was not legally obligatory on either party, until a deed conveying the land, or some other writing evidencing the sale and binding the vendor, was ac-tually accepted by the purchaser, or his authorized agent. The parol agreement to sell and convey the land, being unobligatory on the vendor, formed no consideration for the promise to pay the price or to accept the deed. To say that the purchaser is bound to accept the deed, which will bind him to pay the money, would be to hold him bound by the con-tract at the will of the vendor, who is not bound, and would enable the vendor to maintain an action against the vendee for the nonacceptance of the deed and for the nonpayment of the money, while the vendee could not, by paying or tendering the money, have an action against the vendor."

The same question was again before the court in Curnutt v. Roberts, 11 B. Mon. 42. There the court, again refusing a recovery, said: "A verbal contract for the sale of land is not legally obligatory upon either party until some writing evidencing the sale, and sufficient to take the contract out of the opera-tion of the statute of frauds, is executed by the ven-dor and accepted by the purchaser. The verbal agree-ment to sell and convey land, not being binding on the vendor, formed no consideration for the promise to pay the money or to accept the deed. The promise,

therefore, to pay the money, being without considera-
tion, was legally invalid, and could not be enforced.''

These cases were approved in Usher v. Flood, 83
Ky. 552; Fite v. Orr, 1 S. W. 582, 8 Ky. Law Rep.
349. In the subsequent case of Moore v. Chenault,
29 S. W. 140, 16 Ky. Law Rep. 531, where the court
had before it again the construction of the statute,
it said: ''The vendor is the party vested with title.
It is he who can assume a liability which will com-
pel him to convey the title to the property to the ven-
dee. It is he alone who can sign such writing as will
divest him of title. The law intended him to be pro-
tected in his right to his property until he volun-
tarily disposed of it by a writing. It did not intend
that he should be placed in the power of perjurers
to take it from him by proving a parol sale. It is
the vendor 'to be charged' with the   contract   of
sale.''

It has been held in a number of cases that the con-
tract need not be signed by the purchaser; that a
receipt showing the contract and signed by the ven-
dor is sufficient. Gully v. Grubbs, 1 J. J. Marsh. 388;
King v. Hanna, 9 B. Mon. 371; Tyler v. Onzts, 93
Ky. 331, 20 S. W. 256, and cases cited. The necessary
effect of these opinions is that under the statute the
purchaser is not ''the party to be charged''; and
manifestly a writing executed by one who is not ''the
party to be charged'' cannot satisfy the statute. The
purpose of the statute is to protect the holders of
title to realty from alleged verbal agreements for its
sale. The English act was   given   this   meaning
(Browne on Frauds, sections 267, 269); and, while
some of the words contained in it are omitted from
ours, the meaning on this point is the same. To hold
that ''the party to be charged'' is the party against

City of Murray v. Crawford.

whom the suit is brought would be to allow the vendor in cases like this to maintain an action, though none could be maintained by the vendee against him. This, as shown by the cases cited, cannot be done. The justice of the rule thus declared by the court is well illustrated in this case; for it is manifest that, if the contract between the committee and Crawford had been drawn up and put in writing, there would have been no such misunderstanding between the parties as is shown by the record before us. The statute against frauds and perjuries was designed to prevent the use of oral evidence in controversies of this kind. We therefore conclude that the contract sued on being within the statute, no action can be maintained upon it.

Judgment reversed, and cause remanded, with directions to the circuit court to sustain the defendant's demurrer to the petition.