# Wren v. Cooksey, et al.

(Decided April 19, 1912.)

## Appeal from Barren Circuit Court.

1. Statute of Frauds—Vendor and Purchaser—Party to be Charged. —Under our statute of frauds the party to be charged is the vendor of real estate, and if he signs the contract of sale and it is delivered to and accepted by the purchaser, the purchaser will be bound.

2. Principal and Agent—Authority of Agent—Ratification.—Even though an agent be not authorized by the purchaser to enter into a contract for the sale of land upon the terms therein specified, yet if he, by check on his principal's account, makes a cash payment required by the contract, and the contract is then delivered to him and by him delivered to his principal, who accepts and retains the contract in his possession, this will constitute a ratification of the agent's act.

3. Specific Performance—Depreciation in Value of Property Generally—Grounds for Refusal.—Where no fraud nor imposition has been practiced on the purchaser, and the contract is not otherwise unconscionable, the mere fact that after the contract was made there was a depreciation in the value of property generally in the vicinity, is not a sufficient ground for refusing the vendor specific performance.

4. Attachment—Ground for—Evidence Sufficient.—Where defendant, after entering into a contract for the purchase of real estate, gives and conveys a lot of ground to her son, who disposes of it and invests it in personal property, and also places a mortgage on her remaining property, this is sufficient evidence to show that the purchaser was selling and disposing of her property with the fraudulent intent to cheat, hinder or delay her creditors including plaintiff.

5. Attachment—Levy—Sheriff's Return On.—The same particularity of description upon a sheriff's return of the levy of an attachment is not required as in the case of the levy of an execution. In the case of an attachment the generality of the description makes no difference, provided it is sufficiently intelligible to fix the lien of the attachment.

6. Specific Performance—Interest—Rents.—In an action for specific performance, where the vendor remains in possession of the property, he should be charged with the reasonable rental value thereof, not, however, to exceed the interest due on the balance of the purchase price; and if, for the purpose of giving possession, he rents another place and pays the rent thereon, though he still retains possession of the property sold, he may deduct the amount of the rent so paid from the rental value of the premises while occupied by him.

7. Appeal and Error—Judgment—Clerical Misprision.—A judgment rendered for interest inconsistent with the prayer of the peti-

tion is a clerical misprision, and is not reversible upon appeal until after application to amend has been made and refused in the trial court.

DUFF & HUTCHERSON, O'REAR & WILLIAMS and JOHN W. COMPTON for appellant.

BASIL RICHARDSON, BAIRD, RICHARDSON & SUMMERS for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

D. J. Cooksey owned a house and lot in Glasgow, Kentucky. On August 20, 1910, he and his wife, E. J. Cooksey, by contract in writing, sold the property together with certain personal property therein, to Ellen E. Wren. The consideration was $100 to be paid when the contract was signed, and the balance of $3,400 to be paid November 1, 1910. At that time Cooksey and wife agreed to give possession of the property, and make good title thereto. This contract was delivered to Horace Wren, who was conducting the transaction for his mother, Ellen Wren.

Having refused to carry out the contract, D. J. Cooksey and his wife, E. J. Cooksey, brought this action against Ellen Wren for specific performance. They also allege certain special damages. The only item of special damages necessary to notice is one of $15.00 for rent claimed to have been paid by the Cookseys for a house to move into in order to give possession of the property sold to Mrs. Wren. A general order of attachment was sued out, which was levied on a house and lot in Edmonton, belonging to Mrs. Wren, and on a pair of mules and a lot of furniture. Upon final hearing, it was adjudged that plaintiffs were entitled to specific performance of the contract, and that the defendant accept the property conveyed. She having declined to accept it, judgment was entered in favor of plaintiffs for $3,400 with six per cent interest from August 20, 1910, until paid, and for costs. To secure this amount it was adjudged that plaintiffs had a lien on the property in Glasgow sold to the defendant, that the order of attachment levied on defendant's property in Edmonton be sustained, and that by virtue of the levy thereof, plaintiffs had a lien on that property, as well as on the pair of mules and furniture in possession of Horace Wren, which were also levied on.

To pay the debt, interest and costs, the commissioner was directed to sell a sufficiency of the property. He was first directed to sell the property in Glasgow, and then a sufficiency of the other property to satisfy the balance, if any. Judgment was also given for special damages in the sum of $15, and a lien on the property attached to secure the same. From this judgment, Mrs. Wren appeals.

It is shown by the evidence for plaintiffs that the Cookseys had for some time been conducting a hotel in the property in Glasgow, which they sold to Mrs. Wren. Mrs. Wren was an experienced boarding house keeper, and resided in Edmonton. Her son, Horace Wren, who was twenty-nine years of age, resided in Glasgow, near the Cooksey hotel. Horace Wren spoke to his mother about the advisability of purchasing the hotel, and she became interested in the matter. Thereupon he approached W. T. Button, a real estate agent at Glasgow, and asked him if he had the hotel property listed. Button informed him that he had not. Thereupon Horace Wren told him to get the property listed, as his mother desired to buy it. Button saw E. J. Cooksey, who listed the property with Button at $3,500. Button informed Horace Wren of this fact, who then communicated with his mother. Shortly thereafter, Mrs. Wren came to Glasgow and examined the property, and agreed to take it at the price of $3,500. A few days later Horace Wren went to G. H. Davis and told him to call Bob White, as he wanted him to fix up some papers for him. Davis called White over the phone, but could not get him. Thereupon he called B. G. Ellis, and requested him to come to his office. Ellis came, and Horace Wren stated that his mother had bought the Cooksey hotel, and she was to get possession of it the first of November; that he was to pay $100 cash down as soon as the instrument was signed up, and that his mother was to pay the balance of $3,400 on November 1st. He also stated that Cooksey's engine and fan and certain things in the hotel were included in the sale. Following this statement of what the contract was to contain, Ellis prepared the contract, which is the one sued on in this action. When the contract was thus prepared, Horace Wren carried it to Cooksey for his and his wife's signature. When presented, Mr. Cooksey discovered that there was a mistake in the description. Thereupon Horace Wren carried the contract to another lawyer, Paul Greer, who, in

the presence of the parties, inserted the true description. The contract was then delivered to Horace Wren. At the same time he delivered to Cooksey a check for $100, signed by his mother. After this, Horace Wren consulted J. R. White, another lawyer, as to whether or not Cooksey, under the contract, could be compelled to convey the property. White answered in the affirmative. Horace Wren took possession of the contract, kept it for a few days and then sent it to his mother, who put it away and kept it in her possession until about the time she gave her deposition in this case. It also appears that Cooksey carried fire insurance on the property, and that the loss clause was made payable to Mrs. Wren as her interest might appear. After the contract was delivered to Mrs. Wren, she gave a piece of property in Edmonton to her son, Horace Wren. This property was sold, and with the proceeds thereof he purchased the pair of mules attached in this action. After the transaction was closed, Mrs. Wren repeatedly expressed her intention of taking the property. As late as November 4, 1910, she borrowed the sum of $500 from a Mrs. Scott, saying at the time that she wanted the money to pay on the property that she had purchased in Glasgow.

According to the evidence for defendant, the only contract she made with plaintiffs was that she was to pay $100 for an option on the property until November 1st. and that she was to take the property only on the condition that she could dispose of her Edmonton property at a price satisfactory to her. She did not authorize her son to make any other contract. The contract was never signed by her, or by her son for her, nor was it ever delivered to or accepted by her, although she admits that the contract was sent to and retained by her for several weeks. Her son testifies that although he stated the terms of the contract to Mr. Ellis, Ellis did not draw up the contract in accordance with the terms so stated. Mrs. Wren tried repeatedly to sell her property at Edmonton, but was unable to do so.

Among the defenses interposed by the defendant is that her son was not authorized to make the contract in question. The evidence shows that the initiative in the matter was taken by the son. He advised his mother that the property could be bought. She came to Glasgow and agreed to buy the property. She left the matter in her son's hands. While she says that she authorized him only to take an option on the property, we have no doubt,

after considering the entire record, that he had full authority to act for her in the matter. He made the first payment recited in the contract by check on his mother's bank account. This check was paid. The contract was delivered to him. He then turned it over to his mother. She not only accepted it, but retained it in her possession. Moreover, even though he did not have authority to make the contract, her acceptance and the retention of the contract constituted a ratification of what he had done.

There is no merit in defendant's contention that the contract in question is not binding on her because not signed by her, or by her son as her lawful agent. Under the uniform decisions of this court, the "party to be charged" under our Statute of Frauds (Sec. 470) in the case of real estate, is the vendor. In order to charge the purchaser, or vendee, no writing is necessary. City of Murray v. Crawford, 138 Ky., 25, 127, S. W., 494. Delivery to and acceptance by the purchaser is all that is necessary. In this case, the contract was delivered to and accepted by Mrs. Wren. From that moment she could have enforced specific performance on the part of the plaintiffs, while they had the same rights so far as she was concerned.

Having made the contract and agreed upon the price, and there being nothing in the record to show that any fraud or imposition of any kind was practiced upon her, or that the contract was otherwise unconscionable, the mere fact that after the contract was made there was a depreciation in the value of property generally in the city of Glasgow, is not a sufficient ground for refusing plaintiffs a special performance of the contract. The fact that there was a mortgage on the property furnished no good reason for defendant's refusing to carry out the contract, for the mortgage lien could have been discharged out of the purchase money. 36 Cyc., 639; 26 Am. & Eng. Encyc. of Law, p. 109.

We think there was sufficient ground for sustaining the attachment. One of the grounds was that Mrs. Wren was mortgaging, selling and disposing of the property, and converting it into cash and investing it in the name of her son, for the fraudulent purpose of cheating, hindering and delaying plaintiffs in the collection of their claim. The evidence shows that after the contract of purchase was entered into, Mrs. Wren conveyed a lot of ground to her son, which was sold and the proceeds invested in a pair of mules, which he had in his posses-

sion.  She also mortgaged the property in which she
lived for the sum of $500.

It is insisted, however, that the sheriff's return of the
levy made on the property in Edmonton was not suf-
ficiently accurate to identify the property. The order of
attachment was addressed to the sheriff of Metcalfe
county, and directed him to attach and safely keep the
property of Mrs. Wren.  His return shows that the order
of attachment was executed "by delivering a true copy
to Ellen Wren, and levying on two town lots
in Edmonton."  The evidence shows that Mrs.
Wren owned only two lots in the town of Ed-
monton, and from whom she obtained a deed
therefor.  The deed is introduced, and from this
deed the description in the judgment was obtained.  We
have held that the same particularity of description is
not required in the case of the levy of an attachment, as
in the case of the levy of an execution.  The levy of an
attachment upon land is merely for the purpose of
creating a lien upon it so as to give the court issuing the
order jurisdiction of the property, that it may thereafter,
by the court's order, be applied to the payment of plain-
tiff's judgment, if he obtain one.  Having thus obtained
control of the property, the court may, in its order of
sale, enlarge its description as given by the sheriff's re-
turn, so as to correctly identify the land.  In other words,
after the sheriff has made his return of the levy, the
property is then under judicial control, and the sale of
it by order of court is a judicial sale; and
while the court cannot enlarge the quantity of
the property levied on, or substitute other prop-
erty in its place, it may disregard the descrip-
tive language of the return, and engraft in its order of
sale an accurate description of the property, so that all
persons may understand what property is to be sold, and
for what property they are bidding.  The generality of
the description makes no difference, provided it is suf-
ficiently intelligible to fix the lien of the attachment.
White v. O'Bannon, 86 Ky., 93; Price v. Taylor, 110 Ky.,
594; Drake on Attachments, Sec. 237; Waples on Attach-
ments and Garnishments, p. 172; Freeman on Execu-
tions, Sec. 281.

After the order of attachment was sustained and
after the court had given judgment, though the judgment
had not been entered the defendant offered an amended
answer pleading a homestead in the property in Edmon-

ton. When the case was submitted, plaintiffs declined to read that portion of the depositions which bore on the question of homestead, on the ground that no issue of homestead was made in the pleadings. Parties will not be permitted to try their case by piecemeal. They cannot rely upon one defense, and upon their failure to succeed on that, then interpose another. We therefore conclude that the court did not abuse a sound discretion in declining to permit the amended answer to be filed. Besides, with the evidence of Button, the real estate agent, excluded, which was not read on the hearing, there is not sufficient evidence to sustain the allegations of the amended answer.

By Section 516 of the Civil Code, a misprision of the clerk shall not be ground for appeal until the same shall have been presented and acted upon in the circuit court. A judgment rendered for interest inconsistent with the prayer of the petition is a clerical misprision, and is not reversible on appeal until after application to amend has been made and refused in the trial court. Clark v. Fennell, 16 B. Mon. 329; Johnson v. Bank, 2 Duv., 521; Armendt v. Perkins, 17 R., 1327; Commonwealth, by &c. v. Caudill, 28 R., 521.

The petition in this action asked interest on the $3,400 from November 1, 1910, the time it was due. The judgment gave interest on said sum from August 20, 1910, the day the contract of sale was executed. It follows, therefore, that the allowance of interest from August 20, 1910, instead of from November 1, 1910, was a clerical misprision, and affords no ground for reversal until a motion has been made in the trial court to correct the error, and the motion has been overruled.

It appears from the evidence in this case that plaintiffs occupied the hotel property in Glasgow, pending these proceedings. Specific performance is not decreed as a matter of right, but as a matter that appeals to the sound discretion of the chancellor, and when decreed, will be granted upon fair and equitable terms. We, therefore, conclude that Mrs. Wren should not be charged with interest from November 1, 1910, without at the same time charging plaintiffs with the reasonable rental value of the property in controversy while in their possession. It also appears that plaintiff, for the purpose of giving possession of the property, rented another piece of property, and paid one month's rent, amounting to $15. While ordinarily he would not be per-

mitted to recover this sum in addition to the interest on the balance of the purchase price due, yet he should not be charged with this sum in addition to the rental value of the property, but should be credited with this sum on the rental value. We, therefore, conclude that the judgment for $3,400 and interest from November 1, 1910, should be offset by the reasonable rental value of the property in controversy, which in no event, however, must exceed the interest due.

Upon a return of the case, the parties may agree upon a reasonable rental value, or the court may hear additional proof.

Judgment reversed and cause remanded for proceedings consistent with this opinion.