## Kash, et al. v. United Star Oil Company, et al.

(Decided October 4, 1921.)

### Appeal from Kenton Circuit Court.

1. Frauds, Statute of—Action to Recover Sale Price of Oil Lease—Pleading.—A petition to recover the sale price of an oil lease is bad on demurrer if it fails to aver that the contract or some memorandum thereof is in writing signed by the party to be charged.

2. Frauds, Statute of—Oil and Gas Lease.—An oil and gas lease is an interest in real property and must be in writing, so also must an assignment of a lease to be valid.

3. Frauds, Statute of—Mines and Minerals—Pleading.—An averment that the plaintiffs "offered and tendered a transfer of assignment of said oil and gas lease, and have at all times since that date been ready and willing to transfer and assign same and they here tender said assignment," is insufficient because it does not allege that the assignment was prepared in writing and signed by the vendor or assignor.

4. Frauds, Statute of—Party to be Charged.—The party to be charged in an assignment of an oil lease is the assignor.

KELLY KASH and JACKSON & WOODWARD for appellants.

MYERS & HOWARD and WM. J. MIX for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Appellants, Kash and West, became the owners of an oil and gas lease on the Elias Chaney seventy-acre tract on Buck Creek in Estill county in February, 1919. In the following April Kash entered into negotiations with appellee, M. Gordon, and the United Star Oil Company, incorporated, whereby he proposed and attempted to sell and assign the lease to them in consideration of $6,000.00; $1,000.00 to be paid in the stock of the United Star Oil Company and the balance in money, the latter to be paid $2,000.00 in hand and the remainder in installments at

stated times. The lease was not assigned or transferred at the time nor was there any payment on the purchase price. Immediately following the deal, which was made in the offices of the company in Louisville, Kentucky, Kash returned to his home in Irvine and began by telegrams and letters to urge Gordon, who was president and managing officer of the corporation to come on to Irvine and close up the deal for the lease. About the same time the corporation ran a display advertisement in the Sunday Louisville Herald, in which advertisement was a paragraph in part reading: "WE'VE BOUGHT ONE LEASE. This lease, on which we have exercised our option, is on a tract of seventy acres on Buck Creek, in Estill county, immediately adjoining production. We have arranged to have a rig go on this property immediately."

The description in the advertisement would indicate that the lease in question was the one intended. The advertisement was over the corporation's printed signature. No written assignment of the lease was delivered to or accepted by the company or Gordon and no payments were ever made on the lease although Kash often importuned Gordon and the company to do so. Failing to collect the sale price of the lease, Kash and West, the joint owners and would be vendors, began this action in the Kenton circuit court against the United Star Oil Company and M. Gordon to recover $6,000.00, the alleged agreed price. A general demurrer being filed, the petition was amended more than once, but the demurrer was finally sustained and the plaintiffs declining to further plead and announcing a purpose to stand by their pleadings, which had been held insufficient on demurrer, the court dismissed their cause, from which judgment they appeal to this court. The demurrer was sustained because the trial court was of the opinion that the contract declared upon was within the statute of frauds, there being no sufficient writing signed by the parties to be charged to take the contract out of the operation of the statute.

Does the petition as amended state facts sufficient to constitute a cause of action against the defendants or either of them?

This court has frequently held that the vendor in a real estate transfer is the party to be charged. City of Murray v. Crawford, 138 Ky. 25; Wren v. Cooksey, 147

Ky. 825; Henry v. Reeser, et al., 153 Ky. 8; Childers v. Little, &c., 16. R. 521.

It is also well settled that an oil or gas lease is an interest in land and must be in writing and no valid assignment thereof can be made except in writing. Beckett-Iseman Oil Company v. Backer, 165 Ky. 818.

The original petition sets forth no writing whatever signed by the "party to be charged" with the execution of the assignment of the lease or any note or obligation signed by the appellees or either of them, as vendees, and was of course bad on demurrer. The first amendment related merely to a garnishment which plaintiffs desired to obtain. The second amended petition averred that "plaintiffs and defendants confirmed, ratified and recognized the contract so alleged by letters, by telegrams, by telephone conversations and in personal conversations between plaintiffs and defendants." It then avers that the defendants caused the advertisement set out above to be inserted in the Sunday Louisville Herald and that the seventy acres referred to in that advertisement are the same seventy acres sold by plaintiffs to defendants as set forth in the original petition. It is also alleged in said amended petition that one of the plaintiffs, Kelly Kash, sent a telegram from Irvine, Kentucky, April 17, 1919, to M. Gordon, room No. 607 Republic building, Louisville, Kentucky, which reads: "Important you reach here tonight; leaving there two o'clock today."

On the same date Kelly Kash wrote and posted a letter to M. Gordon, Louisville, Kentucky, in which he said: "I regard it as very necessary that you come down here at once and look over these properties, the two on which Mr. Lothier gave you option, and the seventy-acre lease you are taking from me. You have advertised these *options* and it is necessary that steps be taken at once to complete the purchase. As to the 70-acre lease a well is being drilled within less than 400 feet of it and it is important that this deal be closed this week.

"I suggest you make an effort to come here so as to reach here Saturday morning, or in fact you can leave Louisville at two o'clock Friday afternoon and reach here via Frankfort at 8:35 tomorrow night. You should arrange to come then."

Again on May 5, 1919, Kash wired Gordon:

"When can I expect you here to close deal? Important."

No answer or response is alleged to have been received by Kash to any of the foregoing telegrams and letter unless the following telegram dated May 7, 1919, can be so considered:

"Just arrived. I am working on my deal to be closed shortly. The United Star Oil Company has no money at all; they did not sell any stock and are not trying to sell any. It is up to me to raise my personal money to buy productions.     "M. Gordon."

Thereupon Kash wrote Gordon May 12, 1919, as follows:

"I enclose you two notes for $1,000.00 each, which you can sign as the first payment on the 70-acre Chaney lease on Buck Creek.

"The other owner with me is very impatient about our delay in this matter and it is necessary for us to do something. Sign these notes by United Star Oil Company and you endorse the notes on the back individually. Do this at once. You can see from the enclosed clipping that things are active on Buck Creek. We can take care of the latter payments when I see you."

These notes were not signed or returned by Gordon or the company. On May 24th Kash again telegraphed Gordon:

"Can you arrange for Buck Creek seventy-acre lease Monday?"

It is also averred that on May 28th a letter was forwarded from the office of Kash in his absence to Gordon in Louisville, telling him about the bringing in of a forty barrel well on an adjoining lease, but this letter is not signed by any one and can not, therefore, be considered sufficient to take the contract out of the operation of the statute. The only other letter or writing relied upon in the amended petition is the following written by Kash to Gordon, October 20, 1919:

"Jackson, Kentucky, October 20th, 1919.

"Mr. M. Gordon,
     Covington, Kentucky.

"Dear Mr. Gordon.

"I intended to send you a statement of claim against you for the lease known as the Elias Chaney lease of seventy acres situated on Buck Creek in Estill county. You will recall this lease was sold to you while you had offices in Louisville, Kentucky, at the agreed price of

$6,000.00. · I had certain maps before me when you and I closed the deal for this lease, and it was definitely agreed upon as to price and terms.  I agreed to take the sum of $1,000.00, as I recall, in stock of this corporation, and the sum of $2,000.00 in cash payments for the balance of this $6,000.00.  After I sold you this lease, and in order to preserve the lease, I paid two monthly rentals of $70.00 each.

"There have been some developments in the vicinity of this property since we first made the deal for this lease and it is not quite so valuable now as it was then. It was an altogether valuable and attractive lease at that time, with development and production on the adjoining lease and within only a few hundred feet.  Now, in order to adjust this matter and get a settlement, and by way of compromise, I am suggesting here that upon the payment of $3,000.00 in cash and the payment of the additional sum of $140.00 to cover rentals paid, I will accept same in full settlement of claim against you for this lease.  This is quite a concession as I held this lease for you and lost the opportunity to make a sale of it to many other parties.

"Please let me hear from you at once in settlement of this matter, as I am not in position to delay the matter for any time.

"Respectfully,
"KELLY KASH."

Only one of the communications set forth above—a telegram—is signed by Gordon; the company did not sign, and this telegram indicates no purpose whatever on the part of defendants, or either of them, to buy the oil lease in issue, but, on the contrary, clearly evidences a good reason as well as an intention not to do so.  This telegram does not, therefore, aid the petition and need not be further considered.  Altogether the letters and telegrams set forth do not contain a sufficient description of the property to be sold to identify it although it is referred to as an oil lease on Buck Creek—the Chaney lease —a seventy-acre lease adjoining production.  There may have been and doubtless were a number of seventy-acre oil leases on Buck Creek and there may have been several Chaney seventy-acre oil leases on Buck Creek, but even more indefinite is the location of Buck Creek, for almost every county in Kentucky has a stream bearing that name, and Estill county is not mentioned in any of those letters or telegrams except the last letter dated October

20, 1919, which was, as shown by its terms, written after all hope of a transfer of the lease was gone, and litigation was anticipated. This letter does not aid the plaintiffs' petition or take the contract out of the statute of frauds.

A careful reading of the several writings set forth in the amended petition gives the impression that the sale of the lease by Kash to Gordon and his company was tentative or rather in the nature of an option to sell the property in case it was satisfactory to Gordon when inspected by him, and this idea is clearly manifested by the Kash letter dated at Irvine, Kentucky, April 17, 1919, wherein he said to Gordon (when the contract was fresh in his mind): "You have advertised these *options* and it is necessary that steps be taken at once to complete the purchase." In this statement the writer appears to have contemplated the two Lothier leases as well as the Kash lease. In the next sentence he singled out the Kash lease, saying: "As to the seventy-acre lease, a well is being drilled within less than 400 feet of it, and it is important that this deal be closed this week." In other words those options should be closed, and especially the one on the Kash lease, because a well was being drilled very near it and in case of a big producer coming in the deal might not be easily closed. The letter indicates that the deal amounted to nothing more than an option which had not been closed.

All the other telegrams and letters copied in the pleading and averred to have been sent by Kash to Gordon were intended to excite the speculative propensities of the prospective purchaser and cause him to act quickly and buy and pay for the Kash lease, and do not in any way aid the petition as amended to state a cause of action. If Kash had executed and delivered an assignment of the oil lease to Gordon or to the company at the time or soon after the making of the contract of sale the whole contract would have been enforceable and plaintiffs could have recovered the purchase price, even though no writing was signed by defendants or either of them promising to pay the purchase price, for we have held that a contract respecting the sale of real property is binding on both parties if the necessary memorandum or writing be signed by the vendor and delivered to and accepted by the vendee. Henry v. Reesor, 153 Ky. 8, *supra*.

But the weakness of plaintiffs' cause of action as set forth in the assailed pleading is the want of a sufficient averment that the assignment of the lease by Kash and

West to Gordon and the company was actually prepared, executed and delivered to the vendee or offered to be so delivered. We are not overlooking the averment in the original petition, "plaintiffs state that thereupon they offered and tendered a transfer of assignment of said oil and gas lease, and have at all times since the date been ready and willing to transfer and assign same and they here tender said assignment." To whom was this tender made, and in what way or manner? Was such an assignment reduced to writing and signed by the vendors or either of them or any one for them? If not then it was not such an agreement or writing as was required to take the contract out of the operation of the statute of frauds.

On demurrer a pleading is construed strongest against the pleader. Applying this rule no assignment was reduced to writing or signed or tendered to defendants, Gordon and the United Star Oil Company, or either of them. Unless a contract, assignment or other agreement be alleged to be in writing the presumption prevails that it was oral. This alleged assignment, if such there was, was oral if the averment be subjected to the test of this rule.

As an assignment of an oil and gas lease, to be enforceable, must be in writing and signed by the assignor or vendor and no action can be maintained on a verbal assignment or on any contract respecting the sale of real estate, including oil leases, unless the contract or some memorandum in writing signed by the party to be charged evidence the same, we conclude that the contract sued on was within the statutes of frauds and perjuries and the demurrer to the petition as amended was properly sustained by the trial court.

Judgment affirmed.