### LIVELY v. ELKHORN COAL CO.
No. 11592.

United States Court of Appeals
Sixth Circuit.

July 29, 1953.

Robert T. Winston, Jr., Norton, Va. (J. O. Lively, by counsel, Napier & Napier, Hazard, Ky., Robert T. Winston, Jr., Norton, Va., on the brief), for appellant.

J. W. Howard, Prestonsburg, Ky. (J. Woodford Howard, Prestonsburg, Ky., H. L. Moore, Whitesburg, Ky., Herman L. Taylor, Chicago, Ill., on the brief), for appellee.

Before ALLEN, MARTIN and MILLER, Circuit Judges.

MILLER, Circuit Judge.

Appellant, J. O. Lively, sought by this action to recover damages in the amount of $44,000 by reason of the alleged breach by the appellee, Elkhorn Coal Company, of a contract between the parties pertaining to the strip mining of coal on certain properties owned by the appellee. The jury found for the appellant in the sum of $15,000. Thereafter the District Judge sustained the appellee's motion for judgment notwithstanding the verdict and ordered the action dismissed, D.C., 101 F.Supp. 1014, from which order this appeal was taken.

The complaint as amended alleged that on or about December 15, 1946, the appellant entered into a contract with the appellee whereby the appellant agreed to remove the overburden from certain coal near Kona, Kentucky, with appellant's equipment and at appellant's expense, and that the appellee agreed that if the coal proved suitable for market appellant would be given the contract to strip on the property and to sell the coal through appellee's market outlets; that appellee would deduct 70 cents from the price received for each ton of coal for royalties, sales commission and certain expenses; that the appellant commenced working under the contract, did the necessary prospecting and uncovering of coal, expended at least $6,000 in building bins and $8,000 in building roads, and loaded a great deal of coal from 1947 through 1949; that about February 1, 1949, appellant entered into a subcontract with the Blair & Oldham Construction Company under which Blair & Oldham were given 60% of the gross amount paid to appellant by the appellee for their work in uncovering the coal, and under which contract the appellant and Blair & Oldham operated until January 24, 1950; that on January 24, 1950, appellant had 20,000 tons of coal uncovered and ready to load; on that date the appellee breached the contract by turning the entire stripping contract over to Blair & Oldham and by refusing to allow the appellant to load coal or to perform his portion of the contract;

that following this breach, Blair & Oldham loaded the 20,000 tons of coal which was uncovered and also an additional 60,000 tons that Blair & Oldham later uncovered in their operations; that by reason thereby appellant lost profits of at least $25,000, for which amount he asked damages. The complaint as amended also sought an additional $19,000 in damages for money expended in preparing the property for the stripping operations, such as putting in drainage tile and changing the course of a stream, and for the expenses of building the bins and constructing the roads. Appellee denied that it entered into any grant or lease of the mining rights for the mining of any particular area or quantity of its coal, or for any given period of time, and alleged that it permitted the appellant to go upon its properties and strip and market coal therefrom under arrangements terminable at the will of either of the parties; that under the arrangement the appellant was to bear all of the expenses incident to the construction and repair of roads, coal bins, and other expenses involved in the stripping operations, and that the appellee was not to be charged with or bear any part of such expenses; that appellant on January 24, 1950, voluntarily entered into a contract with Blair & Oldham under which all the stripping operations were turned over to Blair & Oldham in consideration of their agreement to pay the appellant an overriding royalty of 15 cents per ton on the coal produced by them; and that, in any event, the alleged agreement between the appellant and appellee was an oral agreement involving the sale or lease of real estate, which rendered it unenforceable under Sec. 371.010, subsection 6, Kentucky Revised Statutes, which required such a contract to be in writing. Upon the completion of the evidence upon the factual issues involved the case was submitted to the jury, the Court reserving for a later ruling the legal issue under the Kentucky Statute of Frauds. The action of the Trial Judge in sustaining appellee's motion for judgment notwithstanding the verdict was the result of the Judge's conclusion that the contract sued upon was an oral agreement admitted-

ly not reduced to writing, and was therefore unenforceable under the statutory provision above referred to.

Sec. 371.010, subsection 6, Kentucky Revised Statutes, provides—"No action shall be brought to charge any person: * * * (6) Upon any contract for the sale of real estate, or any lease thereof for longer than one year; * * *" unless the agreement or some memorandum thereof be in writing and signed by the party to be charged therewith. We are of the opinion that the District Judge was correct in holding that the transaction in question fell squarely within the terms of the statutory provision. Under the applicable Kentucky authorities it appears well settled that a lease of mineral rights which gives the lessee the right to explore and remove the minerals therefrom is a transaction for the transfer and sale of an interest in lands and is unenforceable unless the statutory provisions are complied with. Beckett-Iseman Oil Co. v. Backer, 165 Ky. 818, 178 S.W. 1084; Commonwealth v. Elkhorn Piney Coal Mining Co., 241 Ky. 245, 43 S.W.2d 684; Kash v. United Star Oil Co., 192 Ky. 422, 424, 233 S.W. 898; Lowther v. Scheirich, 195 Ky. 177, 178, 241 S.W. 834; Nisbet v. Dozier, 204 Ky. 204, 263 S.W. 736; Kentucky Counties Oil Co. v. Cupler, 204 Ky. 799, 802, 265 S.W. 334.

■ Appellant contends that certain inter-office correspondence between certain officers and employees of the appellee pertaining to the agreement furnished the necessary written memorandum required by the statute. The various letters relied upon by appellant are discussed in the briefs of the respective parties, but we find it unnecessary to reproduce them here. Several of the earlier letters refer to the probability of the appellee entering into some agreement with one of two or three contractors, including the appellant, who might be interested in the question of "possible stripping at Kona." Later correspondence developed the fact that the appellant was expending considerable money in the development of the property, was acting as an independent contractor, had loaded some coal, and was to receive 75 cents per ton under the going price for ramp run of mine coal. Other letters referred to the Lively "stripping at Kona," the deteriorating condition of the coal market and the advisability of changing the arrangement to a flat basis of $3.51 a ton. While this correspondence indicated the existence of some arrangement between appellant and the appellee with respect to the strip mining of coal on property of the appellee, it fails to show what specific area of coal property was involved, either the beginning or ending of the period in which the operations were to be performed, or the provisions governing the respective rights, duties and obligations of the contracting parties. In our opinion, the correspondence was insufficient to constitute the written memorandum required by the statute. Beckett-Iseman Oil Co. v. Backer, supra, 165 Ky. 818, 822, 178 S.W. 1084; Kash v. United Star Oil Co., supra, 192 Ky. 422, 426–427, 233 S.W. 898; Kentucky Counties Oil Co. v. Cupler, supra 204 Ky. 799, 802–803, 265 S.W. 334; McKnight v. Broadway Investment Co., 147 Ky. 535, 545–546, 145 S.W. 377.

■ Nor does part performance of the contract make the Statute of Frauds inapplicable. It is the established rule in Kentucky that with the exception of contracts not to be performed within one year from the making thereof part performance of a contract required by the statute to be evidenced by writing does not operate to take the transaction out of the statute, although a party may have equitable rights which he may enforce. Beckett-Iseman Oil Co. v. Backer, supra, 165 Ky. 818, 820, 178 S.W. 1084; Maloney v. Maloney, 258 Ky. 567, 573, 80 S.W.2d 611; Wilson v. Adath Israel Charitable & Educational Association's Agent, 262 Ky. 55, 60–61, 89 S.W.2d 318.

■■ Although part performance of the contract will not take the contract out of the Statute of Frauds, there are numerous rulings by the Kentucky Court of Appeals that although the contract itself is unenforceable, a party thereto who has partly performed in reliance upon the other party's promises, may enforce certain equitable rights arising out of such part performance. Usher's Ex'r. v. Flood, 83 Ky. 552; Beckett-Iseman Oil Co. v. Backer, supra, 165 Ky. 818, 820, 178 S.W. 1084; Wilson v.

Adath Israel Charitable & Educational Association's Agent, supra, 262 Ky. 55, 60-61, 89 S.W.2d 318. Appellant contends that his complaint as amended presents such an equitable basis of recovery by reason of the expenditure on his part of $19,000 in preparing the property for the stripping operations, in building bins, and constructing roads, which improvements have been used by the appellee after the termination of its agreement with appellant. However, appellant concedes by his complaint as amended that such work was to be performed by him at his own expense and that he has received substantial payments from the appellee as the result of having made such expenditures. The agreement under which appellant was operating did not provide for any minimum period of time. Such expenditures on the part of the appellant do not necessarily establish a basis for recovery. Boone v. Coe, 153 Ky. 233, 238-239, 154 S.W. 900, 51 L.R.A.,N.S., 907. The District Judge apparently considered the evidence insufficient to sustain this theory of the case. By his instructions to the jury appellant's recovery, if any, was in connection with damages resulting from the alleged breach of contract. The case was submitted on that theory alone. Appellant requested no instruction on the theory of the case which he now urges upon us, took no exception to the failure of the Trial Judge to so instruct the jury, and did not obtain a ruling on such a theory. The question is not before us on this review. Rule 51, Rules of Civil Procedure, 28 U.S. C.A.; Stilwell v. Hertz Drivurself Stations, 3 Cir., 174 F.2d 714, 715; Pan-American Life Ins. Co. v. Fowler, 5 Cir., 174 F.2d 199, 202; Chesapeake & Ohio Ry. Co. v. Thomason, 6 Cir., 70 F.2d 860, 863; Helvering v. Tex-Penn Co., 300 U.S. 481, 498, 57 S.Ct. 569, 81 L.Ed. 755; Cold Metal Process Co. v. McLouth Steel Corp., 6 Cir., 170 F.2d 369, 380. See National Bank of Commerce in Saint Louis v. Laughlin, 305 Mo. 8, 264 S.W. 706, 717.

Appellant's original complaint also alleged that appellee's manager wrongfully and maliciously induced Blair & Oldham to break their contract with the appellant and to enter into a contract with the appellee, and now urges upon us that this in itself was an act for which damages are recoverable. Chambers v. Probst, 145 Ky. 381, 140 S.W. 572, 36 L.R.A.,N.S., 1207; Brooks v. Patterson, 234 Ky. 757, 29 S.W.2d 26. This issue likewise was not submitted to the jury by the Trial Judge, and for the reasons outlined in the preceding paragraph, it is not presented to us for review.

The judgment is affirmed.