**James Patrick SWEENEY and Robin Sweeney, Appellants**

v.

**Michael THEOBALD, Barbara Theobald, Joseph Simms, Santosh Bhatt, and Melody Malone, Appellees.**

No. 2002–CA–002109–MR.

Court of Appeals of Kentucky.

Feb. 13, 2004.

J. Gregory Joyner, Louisville, KY, for appellants.

Jason C. Vaughn, Louisville, KY, for appellees.

Before BARBER, GUIDUGLI and VANMETER, Judges.

*OPINION*

VANMETER, Judge.

This is an appeal of a summary judgment of the Jefferson Circuit Court upholding an arbitration decision in favor of appellees. The Sweeneys appeal, arguing that they were not contractually bound to submit to arbitration and that summary judgment was premature. For the reasons hereafter stated, we affirm.

In 1999, appellees Michael and Barbara Theobald ("Theobalds"), listed for sale their property at 9903 Glenda Court, Louisville, Kentucky. The listing agents for the Theobalds were appellees Santosh Bhatt and Joseph Simms. On October 29, 1999, appellant James Patrick Sweeney ("Sweeney") tendered an offer on the property in the amount of $153,500. At the time, appellee Melody Malone, a real estate agent, was working with Sweeney and his wife Robin. By its terms, the offer expired at 9:00 p.m. on October 29. Below the signature of Sweeney, the preprinted form contract contained response sections for Acceptance and for Rejection/Counteroffer. The Theobalds rejected Sweeney's offer and counteroffered at $157,500, with a few additional terms which are not perti-

nent to this appeal. Additionally, the counteroffer provided that it was null and void unless accepted by 9:00 p.m. on October 29.

Below the response section for Rejection/Counteroffer was an additional section for *Response to Counteroffer*. Including a few preprinted items, this area of the form stated: "Seller's response is accepted at 6:10 p.m., eastern time, on the 29th day of October, 1999." Below this provision was a signature for "James P. Sweeney" which appears remarkably similar to the first signature of "James P. Sweeney" on the same page of the contract. Sweeney admits the initial signature is his, but vehemently denies having made the second signature.

The record contains a $1,000 bank check drawn November 1, 1999, payable to Re-Max Professionals; the memo portion of the check indicates "Remitter: James P. Sweeney." Presumably this check represents the earnest money deposit paid to bind the contract. The record also shows that after the exchange of the contract, Melody Malone requested an inspection and appraisal on Sweeney's behalf. As a result of the inspection, Ms. Malone typed a Release of Inspections Contingency form, which referenced 9903 Glenda Court and requested that a number of repairs be made. Sweeney and the Theobalds admittedly signed this form. The Theobalds either made the desired repairs themselves or hired subcontractors. Sweeney and his wife also applied for a mortgage with Fifth Third Bank. Approximately one week prior to the scheduled closing, Swee-

ney and Ms. Malone conducted a walk through of the property. As a result of the walk through, Sweeney objected to a two-foot concrete extension on the chimney. Sweeney failed to appear at the closing which had been scheduled for December 10, 1999.

The contract contained an arbitration provision which provided that all claims or disputes arising out of the contract were to be decided by binding arbitration. As a result, the appellees requested arbitration to collect their respective losses and fees due to Sweeney's failure to close.[1] The Sweeneys moved out of state following the aborted closing, and they did not attend the arbitration hearing although they received notice of it. Sweeney sent the arbitrator copies of documents and a one-page response which requested a refund of his earnest money deposit. On July 13, 2000, the arbitrator submitted an opinion and order adjudicating the parties' claims. The arbitrator specifically found that Sweeney signed the contract, agreeing to purchase the property for $157,500. In addition, the arbitrator found that Sweeney "was contractually bound to purchase the home; that he had no legally justifiable reason not to do so." As a result, the arbitrator awarded the Theobalds their damages,[2] awarded the real estate agents their respective commissions, and assessed the fees and costs of the arbitration against Sweeney.

Having obtained an arbitration award, appellees filed suit against appellants. The Jefferson Circuit Court granted appellees' motion for summary judgment en-

---

1. The Theobalds claimed more than $6,500, representing the difference between the contracted sales price and the price for which they eventually sold the property, plus some out-of pocket expenses for their ownership of the property for an additional two and one-half months. The real estate agents claimed

their respective real estate commissions, *i.e.*, $4,725.00 to Bhatt and Simms jointly, and $4,725 to Malone.

2. The arbitrator disallowed a couple of the items sought by the Theobalds, and awarded them $5,818.71.

forcing the award against Sweeney, dismissing the claims against Robin Sweeney, and dismissed appellants' counterclaims. This appeal followed.

KRS 417.050 expressly provides that a provision in a written agreement to submit to arbitration any controversy thereafter arising is valid, enforceable and irrevocable. No question exists that the contract at issue in this case contained an arbitration clause. Sweeney asserts, however, that he did not sign the contract, and that he is therefore not bound by its arbitration provision.

The statute of frauds, KRS 371.010, provides, *inter alia,* that "[n]o action shall be brought to charge any person ... upon any contract for the sale of real estate ... unless the ... contract, agreement, ... or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged therewith...." As applied to contracts for the sale of real estate, Kentucky courts have uniformly held "in a long line of decisions that the party to be charged is the vendor of the real estate, and if the writing is signed by him and it is otherwise sufficient, it will be enforceable by either party." *Hamblin v. Walters,* 246 Ky. 247, 249, 54 S.W.2d 907, 908 (1932).[3] In *Klatch v. Simpson,* 237 Ky. 84, 88–89, 34 S.W.2d 951, 953 (1931), the court unequivocally held:

> [I]n the sale of real estate the signature of the vendor is sufficient to bind him if the writing is delivered to and accepted by the vendee, and ... **such acceptance by the latter need not be in writing, and, of course, no part of his acceptance is required to be signed or subscribed by him.**

(Emphasis added).

Appellant cites *Nicholson v. Clark,* Ky. App., 802 S.W.2d 934, 938 (1990) in support of his argument that "the term 'party to be charged' refers to the person against whom one is attempting to enforce the contract...." Without delving too deeply into the facts of that case, we question the accuracy of that statement. *Nicholson* not only ignores 160 years of case law which consistently interprets Kentucky's statute of frauds as holding that only the vendor is the party to be charged in a contract for the sale of real estate, but it also makes selective citations to portions of both the *Restatement (Second) of Contracts* § 135 (1981), and 72 Am.Jur.2d *Statute of Frauds.* Despite *Nicholson's* reliance on the majority rule, Comment a to § 135 of the *Restatement* explicitly recognizes Kentucky's exception to the majority rule by stating: "[i]n a few states, however, ... by decision, the memorandum of a land contract is required to be signed only by the ... vendor."[4] 72 Am.Jur.2d *Statute of Frauds* § 278 (2001) likewise supports the majority rule set forth in *Nicholson.* However, the next section of that publication states the rule in Kentucky: in a contract for the sale of land, the party to

---

3. The long line of Kentucky cases cited by the court in *Hamblin* includes: *Klatch v. Simpson,* 237 Ky. 84, 34 S.W.2d 951 (1931); *Reeves v. Walker,* 219 Ky. 615, 294 S.W. 183 (1927); *Smith v. Ballou,* 211 Ky. 281, 277 S.W. 286 (1925); *Duteil v. Mullins,* 192 Ky. 616, 234 S.W. 192 (1921); *Kash v. United Star Oil Co.,* 192 Ky. 422, 233 S.W. 898 (1921); *Armstrong v. Lyen,* 148 Ky. 59, 145 S.W. 1120 (1912); *Wren v. Cooksey,* 147 Ky. 825, 145 S.W. 1116 (1912); *Evans v. Stratton,* 142 Ky. 615, 134 S.W. 1154 (1911); *City of Murray v. Crawford,* 138 Ky. 25, 127 S.W. 494 (1910); *Campbell v. Preece,* 133 Ky. 572, 118 S.W. 373 (1909); *Tyler v. Onzts,* 93 Ky. 331, 20 S.W. 256 (1892). *See also Henry v. Reeser,* 153 Ky. 8, 154 S.W. 371 (1913); *Curnutt v. Roberts,* 50 Ky. (11 B. Mon.) 42 (1850); *Lewis v. Grimes,* 30 Ky. (7 J.J. Marsh.) 336 (1832).

4. The Kentucky case cited as authority for the comment is *Klatch v. Simpson,* 237 Ky. 84, 34 S.W.2d 951 (1931).

be charged is the vendor, and only the vendor is required to sign a contract which is accepted by the vendee. 72 Am.Jur.2d *Statute of Frauds* § 279 (2001).[5]

Applying Kentucky's long-standing rule governing real estate contracts, and accepting as true Sweeney's statement that he did not sign the contract, the undisputed evidence nevertheless clearly indicates there is no genuine issue of material fact as to whether he accepted the contract. As noted by the Jefferson Circuit Court, "Sweeney acted in the manner of someone who entered a contract to purchase the property. He made a loan application, set a closing date, and signed a request for property repairs. Mr. Sweeney also walked through the property a week before the closing and complained about perceived changes to the property." In addition, Sweeney tendered a check to his agent as the earnest money deposit. These actions clearly indicate acceptance of the contract for the property. Sweeney was therefore bound by its terms, including the arbitration provision.

While we believe the holding in *Nicholson* does not comport with previous Kentucky authority, this case can be decided without resort to whether the Theobalds' signature alone binds Sweeney. Sweeney admittedly signed the Release of Inspections Contingency form, which made explicit reference to the earlier signed contract. That signature was sufficient to satisfy the statute of frauds. The written memorandum may consist of a writing signed by the party to be charged, coupled with another writing which is either expressly or impliedly referred to in the signed writing. 72 Am.Jur.2d, *Statute of Frauds* § 286 (2001); *see Lonnie Hayes & Sons Staves, Inc. v. Bourbon Cooperage Co.*, Ky.App., 777 S.W.2d 940, 942 (1989) (court held "[s]eparate writings may form the memorandum of contract required by the Statute of Frauds", citing *Restatement (Second) of Contracts* 132 and 72 Am. Jur.2d *Statute of Frauds* ). The *Restatement (Second) of Contracts* 132 (1981) states the rule as "[t]he memorandum may consist of several writings if one of the writings is signed and the writings in the circumstances clearly indicate that they relate to the same transaction."

In the instant case, Sweeney signed the Release of Inspections Contingency form which explicitly referenced the contract. In these circumstances, the two writings taken together clearly satisfied the statute of frauds. Given the absence of any genuine issues of material fact, it follows that the trial court did not err by granting summary judgment for the appellees.

The judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.

---

**5.** Footnotes to the text of § 279 cite the following cases in support of the statements therein: *Duteil v. Mullins*, 192 Ky. 616, 234 S.W. 192 (1921); *Evans v. Stratton*, 142 Ky. 615, 134 S.W. 1154 (1911); *City of Murray v. Crawford*, 138 Ky. 25, 127 S.W. 494 (1910).