## NATIONAL BANK OF COMMERCE IN ST. LOUIS, Appellant, v. HENRY D. LAUGHLIN.

Division One, July 31, 1924.

1. **APPELLATE PRACTICE: Action at Law: Substantial Evidence: Credibility of Witnesses.** In a case tried as an action at law the weight of the evidence and the credibility of the witnesses are for the jury, and their verdict, if supported by substantial testimony, however contradictory—for instance, their verdict for defendant on the question whether for the accommodation of the payee or for the accommodation of the maker, he indorsed the note sued on, and paid large sums of money for which by counterclaim he seeks reimbursement—is binding on the appellate court. But whether the evidence is in law sufficiently substantial to support the defense

pleaded, or a valid counterclaim, is a question for the court to determine on appeal.

2. **REFERENCE: Action on Contract: Accounts.** Where the real issues are not involved in items of account, but involve the existence of the contract pleaded as a defense—the items of account being for the most part shown by books and being practically undisputed—a compulsory reference is not authorized.

3. **APPEAL.** Unbriefed assignments of error are taken as abandoned.

4. **PROMISSORY NOTE: Accommodation Agreement between Indorser and Payee: Oral Evidence.** The indorser of a promissory note, when suit is brought against him thereon by the payee, may prove, by oral testimony, that his indorsement was an accommodation to the payee, made in pursuance to a definite parol agreement with the payee and at his solicitation and without consideration, if such accommodation and agreement are specifically pleaded, either as a defense on the unpaid part of the note, or as a counterclaim thereon for money paid on such note. The holder of commercial paper, who enters into an agreement with indorsers affecting its validity, cannot invoke protection against its infirmity he has helped to create. The consideration of a promissory note is always subject to proof in an action between the parties to the contract, and an indorser may show, not only that there was a failure of consideration, but by oral testimony what was the actual contract which induced his indorsement. Although the note is in writing and contains no words to indicate it was accommodation commercial paper, and hence on its face is a definite promise to pay a specified sum, as between the indorser and payee parol proof is competent to show what the actual contract was.

5. ———: ———: **Lending Credit: Parol Proof.** Where according to the verdict of the jury, supported by substantial testimony, upon the request of the president of the plaintiff bank that defendant indorse a note payable to him, in order that he might indorse it over to the bank for the accommodation of the bank, defendant simply lent his credit to the bank by his indorsement and did so for the accommodation of the bank, then being harrassed by examiners about the maker's many notes, it was proper to permit defendant to show by parol proof that he was a mere accommodation indorser of said note and indorsed it for the bank's accommodation.

6. ———: ———: **Renewal Notes: Payments by Indorser: Counterclaim.** If the original note was without consideration and a mere accommodation to the payee, all renewals thereof are afflicted with the same infirmities. The bank, being the holder of a note indorsed by defendant for its accommodation, and being desirous of .

having its accommodation in the shape of a note payable directly to it, in order that it might thereby give public evidence to the bank examiners that it was collecting up the maker's indebtedness, asked that this new note be made to embrace, not only the amount of the maker's valueless prior note, but also defendant's own indebtedness to the bank, and that payments be made thereon by the indorser from time to time, in order to show that the bank was in good faith gathering up the maker's indebtedness. Defendant accepted the offer to thus accommodate the bank, but with the understanding that whatever accommodations he extended to the bank by way of payments of the maker's obligations should be re-paid to him. He paid the full amount of his own indebtedness to the bank, and a large sum on the maker's indebtedness as evidenced by the new note, and for these accommodation payments, being without consideration, he asks for judgment on his counterclaim, when sued for the balance due on the new accommodation note. *Held*, that parol proof was competent to prove that this new note was an accommodation to the bank, given without consideration; and the accommodation and the payment of his own debt being established by the verdict of the jury, supported by substantial evidence, their finding that he was entitled to recover on his counterclaim the amount of his accommodation payments, must stand, despite the fact that the last note embraced also his own debt to the bank.

7. ———: ———: Misrepresentations. An indorser of an accommodation note to a bank may relieve himself from liability by showing that he was induced to sign the note by the bank's misrepresentations that the note was amply secured by deeds of trust on the maker's land.

8. APPEAL: Assignment of Error: Under Points. It is customary and usual that the brief for appellant contain a separate assignment of errors, but they may be assigned under points.

9. ———: Miscalculation of Interest: Remittitur. Where the jury finds for defendant on his counterclaim in a principal sum well within the pleadings and proof, and (thoughtfully) make a separate finding of interest, but, misled by defendant's instruction, calculate the interest for one year too much, the appellate court, on plaintiff's appeal alone, has sufficient data to require a *remittitur* of the excessive interest.

10. INTEREST: On Counterclaim: Demand. The filing of a counterclaim is a sufficient demand to authorize the recovery of interest.

11. LIMITATIONS: Pleaded and Abandoned. Plaintiff's plea of the Statute of Limitations to defendant's counterclaim is abandoned by a failure to request instruction on that theory.

12. ———: Running Account: Implied Interval Transactions: Some Items Barred. Where defendant testified that, by express agreement of the parties, his payments on an accommodation note, which constitute the items of his counterclaim, were to be put into an open running savings account in plaintiff bank, none of the items are barred by limitation unless all are, but the last item draws to itself all those which chance to fall beyond the limitation period. Besides, advances of money at intervals to a bank for its accommodation, and without consideration, would by implication constitute an open running account.

Headnotes 1, 3, 8 and 9, Appeal and Error: 1, 4 C. J. pars. 2539, 2830, 2833, 2864; 3, 4 C. J. par. 3057; 8, 3 C. J. par. 1588; 9, 4 C. J. par. 3141. Headnote 2: References, 34 Cyc, 785. Headnote 4: Bills and Notes, 8 C. J. pars. 409, 1339; Evidence, 22 C. J. pars. 1559, 1560. Headnote 5; Evidence, 22 C. J. par. 1560. Headnote 6; Appeal and Error, 4 C. J. par. 2834; Bills and Notes, 8 C. J. par. 353; Evidence. 22 C. J. par. 1559. Headnote 7; Bills and Notes, 8 C. J. par. 449. Headnote 10; Interest, 33 C. J. par. 129. Headnotes 11 and 12; Limitations of Actions; 11, 25 Cyc, 1413; 12, 25 Cyc, 1118.

Appeal from St. Charles Circuit Court.—*Hon. Edgar B. Woolfolk,* Judge.

JUDGMENT MODIFIED AND AFFIRMED.

*George L. Edwards* for appellant; *Charles J. Daudt* of counsel.

(1)   It was the plain duty of the court to have sustained the bank's motion to refer this case and to have referred it to some suitable referee for trial.  Sec. 1426, R. S. 1919.   (2)   The court erred in permitting Laughlin to testify that, when he endorsed the Kern note and when he took up the renewal of that note, giving therefor his own demand, collateral promissory note, he had an understanding with the bank when this endorsement was made and discharged by the giving of his own note that he was not to be required to pay the indebtedness represented thereby to the bank, and that if he did pay such indebtedness it was to be considered in the nature of a savings deposit made by him, to be returned by the bank upon his demand, together with interest thereon at the rate of six per cent  per annum, an understanding directly in contradiction of his written contract of endorsement and of his written note.   This was a flagrant violation of the

fundamental rule that parol evidence is inadmissible to vary or contradict a written agreement. State ex rel. v. Hoshaw, 98 Mo. 358; Bass v. Sanborn, 119 Mo. App. 103; England v. Houser, 178 Mo. App. 70, 82; Bank v. Richmond, 235 Mo. 532. (3) When the bank offered in evidence the note sued upon and Laughlin admitted its execution and that it had not been paid, principal or interest, the bank, of course, made a prima-facie case entitling it to judgment as prayed. Laughlin undertook to overcome this prima-facie case by testifying that, notwithstanding his written contract of endorsement and the written contract in his own note whereby he agreed to pay the balance of the Kern indebtedness represented by the note sued upon, contemporaneous with making said endorsement and giving his own note he had an understanding with the bank that he was not to be held liable thereon and was not to be required to pay said indebtedness or any part thereof, and that if he did voluntarily pay the same, or any part thereof, it was to be treated by the bank in the nature of a savings deposit to be returned by the bank to Laughlin upon his demand, with interest thereon at six per cent per annum. (a) Such testimony was wholly incompetent and it was not permissible for Laughlin to set up or claim such a contemporaneous understanding. (b) The bank submitted evidence, oral and documentary, in the main the written admissions of Laughlin, that he had no such understanding or agreement with the bank. If it were permissible even for Laughlin to show such agreement, the burden of proof was upon him to establish it. The only evidence which he offered to that effect was his own testimony. His testimony on the subject was denied by the bank's officers and by his repeated written admissions in pleadings filed by him, asserting the contrary. Laughlin also attempted to overcome such prima-facie case by claiming that the bank had wasted and dissipated Kern's collateral to his damage. But he had agreed in writing that the bank should not be charged with the duty of preserving Kern's collateral. Laughlin, therefore, failed to establish his

defense, by the greater weight of the evidence.   Downs v. Horton, 287 Mo. 414.

*Abbott, Fauntleroy, Cullen & Edwards* and *Rassieur & Long* for respondent.

(1)   The action does not involve a long account, and hence the order denying reference was proper.   Ice Co. v. Tamm, 138 Mo. 389.   (2)   Oral testimony was properly admitted to show that the delivery of the note was conditional and for a special purpose only.   R. S. 1919, sec. 803; Chandler v. Hedrick, 187 Mo. App. 664; Norman v. McCarthy, 56 Colo. 290; Rubel v. Honig, 178 App. Div. 53, 164 N. Y. Supp. 219; Hodge v. Smith, 130 Wis. 326.   (3)   Oral testimony tending to prove that the defendant was an accommodation maker for the bank was admissible.   St. Louis Union Trust Co. v. Laughlin, 254 S. W. 846; Chicago Title & Trust Co. v. Brady, 165 Mo. 197; Central Natl. Bank v. Walterscheid, 204 Mo. 179; Davis v. Brown, 94 U. S. 423; Rankin v. Bank, 208 U. S. 541; Woodbury v. Glick, 151 Iowa, 648; First Natl. Bank v. Felt, 100 Iowa, 680; First State Bank v. Morton, 146 Ky. 287.   (4)   The oral testimony offered was referred to in the letter written and was consistent therewith, hence admissible.   Minnesota Mfg. Co. v. Grant City Co., 81 Mo. App. 255;   State v. Cunningham, 154 Mo. 161; Work v. Beach, 59 Hun, 625, 129 N. Y. 651; Ruggles v. Swanwick, 6 Minn. 526.   (5)   The same defense that exists against a former note exists against a renewal of said note.   Comings v. Leedy, 114 Mo. 478; Murphy v. Gay, 37 Mo. 537; Johnson v. Grayson, 230 Mo. 380, 398; 3 R. C. L. 1106; 8 C. J. 781.   (6)   When a note is made or given by a surety, or indorsed by a surety on account of misrepresentations relating to the amount of collateral held by the payee, the liability of the surety never attaches.   Third Natl. Bank v. Owen, 101 Mo. 558; Home Savings Bank v. Traube, 6 Mo. App. 221; Harrison v. Lumbermen & M. Co., 8 Mo. App. 37; Savings Bank v. Dinker, 275 Mo. 632; Milan Bank v. Richmond, 235 Mo.

532; Magee v. Manhattan Ins. Co., 92 U. S. 93; Griswold v. Hazard, 141 U. S. 260; Wooley etc. v. Louisville Bkg. Co., 81 Ky. 537; Page on Contracts (2 Ed.) sec. 369. (7) A surety who pays money under the mistaken belief induced by the payee of the note that the payee holds collateral is entitled to recover back the money so paid. Chester v. Bank of Kingston, 16 N. Y. 336; Girardi v. Gardner, 255 Mo. 538; Martin v. Hutton, 36 L. R. A. (N. S.) 602; Clifford Banking Co. v. Donovan Commission Co., 195 Mo. 262. (8) The defendant being an accommodation indorser had the status of a surety for the bank, and like any other surety he could recover back any sums that he paid out for his principal. Priest v. Watson, 75 Mo. 315; Weimar v. Shelton, 7 Mo. 237; Havlin v. Continental Natl. Bank, 253 Mo. 300; Osborne v. Frederick, 134 Mo. App. 449; Noll v. Oberhellmann, 20 Mo. App. 340; 32 Cyc. 250, 276, 278, 835, 836. (9) Limitations do not run against a counterclaim after suit is commenced in which such counterclaim is pleaded, hence no item of the counterclaim was barred. R. S. 1919, sec. 1344; Turnbull v. Watkins, 2 Mo. App. 235; Lowenstein v. Ins. Co., 227 Mo. 120; McDougald v. Hewitt, 132 Cal. 154; Lewy v. Wilkerson, 135 La. 105; Spear v. Brownell, 124 Ill. 27. (10) Under the proof, the money recovered on the counterclaim was money held for defendant's use, and he was entitled to collect interest from the time it fell due. R. S. 1919, sec. 6491; Jefferson City Savings Assn. v. Morrison, 28 Mo. 273.

GRAVES, J.—In its origin (taking plaintiff's petition as the origin) this suit apparently involved a simple suit upon a note for $3000, dated April 24, 1918, payable to National Bank of Commerce, and signed by Henry D. Laughlin. Said note was due and payable on July 23, 1918, and bore interest from such date at eight per cent.

Defendant plead by way of answer and counterclaim, which were met by a reply. The simple suit upon the $3000 note, supra, finally resulted in a verdict of the jury, in these words:

"We, the jury, find for the defendant on plaintiff's cause of action; and we further find for the defendant on defendant's counterclaim and assess the amount of his recovery thereon in the sum of $8381.65 with interest at six per cent. Interest $2011.59. Total $10393.24."

Defendant's answer and counterclaim contain a wealth of detail, but the transactions between the parties to this suit seem to justify the pleading, and there is evidence upon the part of defendant tending to show all the well pleaded facts in his answer and counterclaim. The answer and counterclaim are in these words: "1. Now comes the defendant, and by leave of court, files this his amended answer and counterclaim.

"Defendant denies all and singular the allegations in plaintiff's petition contained, and prays to be hence dismissed with his costs.

### SECOND DEFENSE.

"2. And for another and further answer and defense to plaintiff's petition, the defendant says that the note sued on was by him made for the accommodation of the plaintiff and for no other purpose; that it was and is wholly without consideration, and was never given for value received, and only to aid the bank, at its request, to collect the debt of Robert H. Kern to said bank; that no consideration ever passed from plaintiff to defendant, and said note has no consideration to support it. Wherefore, defendant says the plaintiff is not entitled to recover on it.

### THIRD DEFENSE.

"3. For another and further answer and defense, defendant says that prior to February 6, 1908, the National Bank of Commerce, hereinafter called the bank, had loaned to one Robert H. Kern, large sums of money, and at that time held various notes against the said Kern which had previously aggregated nearly one hundred thousand dollars, but then stood at a less amount; that said Kern was not at that date solvent and many of the notes held by the plaintiff were not adequately secured

· by collateral or otherwise, and the official bank examiners were criticising said bank and its president, and insisting that said notes be either adequately secured or deducted from the assets of the bank; that at that time, the said Kern had title to, and owned, about two thousand acres of land in Macon County, Missouri, which was encumbered by a deed of trust for about twenty-five thousand dollars, and the value of said land over and above said encumbrance was in excess of twenty-five thousand dollars.

"4. That a short time prior to February 6, 1908, B. F. Edwards, who was at that time, and for a long time prior and subsequent to said date, the president of the bank, approached defendant and informed him of the state of affairs between the bank and said Kern, as above stated, and requested the said defendant to take, in his name, for the use of the bank, a note for ten thousand dollars, signed by Kern and secured by second deed of trust on the two thousand acres of land in Macon County, owned by Kern, and requested that he, the said defendant, for the accommodation of said bank, endorse his name on the back of said note and deliver it to the bank, so that said bank could hold same as collateral to secure some of the notes of said Kern, held by it.

"5. That at said time, the defendant covenanted, represented and warranted that said Kern owned said land in Macon County; that the same was worth a sum largely in excess of the said second deed of trust for ten thousand dollars, and that the said bank could and would make the whole sum of ten thousand dollars, and accumulating interest thereon, out of the second deed of trust on said land, and that the said bank and said Edwards covenanted, warranted, agreed and guaranteed that the deed of trust was ample to pay the ten thousand dollar note, and that the said bank and the said Edwards would warrant and guarantee said state of facts and indemnify the defendant against any loss, whatever, on account of the endorsement and delivery of said note, and further cove-

nanted, guaranteed and warranted that the indebtedness of Kern to the bank to secure which said ten thousand dollar note should be attached as collateral, would be placed prior to, and ahead of, any other indebtedness of Kern, and be first paid by moneys derived from Kern's properties, and particularly, by money received from the sale of the Kern lands, upon which the deed of trust was to be given.

"6.   Defendant says that for the sole purpose of accommodating the plaintiff, and in consideration of the bank and Edwards undertaking as aforesaid, the defendant agreed to permit the note to be taken in his name, secured as aforesaid, and thereupon the plaintiff caused to be prepared a promissory note, dated February 6, 1908, in the sum of ten thousand dollars, and to secure its payment did cause to be prepared a deed of trust covering all of said lands belonging to Kern in Macon County, to-wit, 1851.75 acres, and thereupon, on the conditions aforesaid, and at the request of the bank, and for its accommodation (but not for the accommodation or at the request of said Kern or any other person) the defendant did endorse and deliver said note for ten thousand dollars, to the bank, upon the conditions aforesaid, and relying solely upon the undertakings of the plaintiff and said Edwards, as above set forth; that said bank, having thus obtained the possession of said note, caused said deed of trust to be filed for record in the office of the Recorder of Deeds for Macon County, and it became the second encumbrance, subject to the prior encumbrance of twenty-six thousand dollars, on all of said lands.

"7.   Plaintiff says that after the delivery of the said note for ten thousand dollars, the defendant, at the request of said bank, and for its accommodation, executed in lieu thereof, other notes in varying amounts, and at divers times, and defendant avers that the note sued upon is part of the original transaction evidenced by the note dated February 6, 1908, the details of which will be more specifically set forth thereafter.

305 Mo.—2.

"8. Defendant further states that on or about the 10th day of August, 1908, while the bank was holding said note, the defendant, at the request of said bank, executed and delivered to said bank a quit-claim deed purporting to release six hundred and eighty-two acres of the land covered by the said second deed of trust, in order to enable the bank to co-operate with said Kern and convert the said land so released into cash or secured notes, by which the debt of Kern, for which the ten thousand dollars was held as collateral, could be paid or otherwise secured, and the note of February 6, 1908, released and satisfied.

"9. Defendant states that some time prior to October 27, 1910, the plaintiff approached the defendant and stated to him that Kern was re-financing his affairs; that he had exchanged about four hundred acres of his land in Macon County, Missouri, for two hundred acres of land in Cameron County, Texas; that the Cameron County land was of the value of thirty thousand dollars; that he, the said Kern, had about twelve hundred acres of Macon County land still in his name, and that he had arranged to borrow thirty-five thousand dollars on first deed of trust thereon, and to give to defendant, for the use of the bank, a note for ten thousand dollars, secured by second deed of trust on said twelve hundred acres in Macon County, and he, the said Kern, had agreed to give the bank a first deed of trust for twenty thousand dollars on the two hundred acres in Cameron County, Texas, and that if defendant would make a full release of the deed of trust dated February 6, 1908, said Kern would execute a new note to defendant, for the use of the bank, for ten thousand dollars, in lieu of the note of February 6, 1908, and that if defendant would endorse and deliver said new ten-thousand-dollar note to the bank, for its accommodation, the bank would hold the Kern note for twenty thousand dollars, secured by the Cameron County, Texas, land, as first collateral to secure said new note of ten thousand dollars, and that as soon as any sums were de-

rived from either the Macon County or Cameron County, Texas, deeds of trust, they would be applied as a credit on the new ten-thousand-dollar note upon which defendant's name would appear as an endorser.

"10.   The said bank and the said Edwards then and there stated, covenanted, warranted and guaranteed that the second deed of trust on the Macon County land would cover twelve hundred acres, and would be amply secured; that said Kern's equity in said twelve hundred acres covered by said second deed of trust was worth a sum largely in excess of ten thousand dollars; that the bank could and would collect the entire sum of ten thousand dollars, and interest, out of said equity, and that it would hold said deed of trust as security for said ten-thousand-dollar note, and further stated, warranted and guaranteed, that it had arranged to obtain from Kern a first deed of trust on two hundred acres of land in Cameron County, Texas; that said Cameron County land was worth thirty thousand dollars, and that the deed of trust was worth its face, twenty thousand dollars, and that it would hold said twenty-thousand-dollar note and deed of trust in addition to the ten-thousand-dollar deed of trust as security and as collateral to secure defendant as an endorser on said note, and the said bank further agreed, stated, represented and warranted that it would indemnify the plaintiff against any and all losses he might sustain on account of his said name appearing on the back of said ten-thousand-dollar note.

"11.   Defendant, relying upon the covenants and understandings aforesaid, and for the sole accommodation of the bank, agreed with the bank to do as it requested, if the bank would remain bound by the aforesaid representations, guaranties, and warranties, and consent, also, that Kern might give to the St. Louis Union Trust Company a second deed of trust for five thousand dollars on the same land, and allow the deed of trust from Kern to Laughlin for ten thousand dollars for the use of the bank, to rank as a third deed of trust on said land, sub-

ject to prior encumbrances, aggregating forty thousand dollars, and to this change, the bank consented and agreed to remain bound by the representations, guaranties and warranties aforesaid, and thereafter the said bank prepared, or caused to be prepared, a deed of trust from Robert H. Kern to Henry D. Laughlin, dated October 27, 1910, to secure a note for ten thousand dollars, payable on demand after date, with six per cent interest thereon from date; that defendant took no part in the preparation of said deed of trust, and did not know how many acres it covered, but has since learned that it covered 374.25 acres only, but the defendant, believing said deed of trust covered twelve hundred acres, as agreed, wrote his name on the back of the note and delivered it to the bank for its accommodation and at its request, on the conditions aforesaid, and relying upon the covenants and understandings and warranties above set forth.

"12.   Defendant says that the said bank then and there received said note of October 27, 1910, in its possession; that on or about the 19th day of February, the defendant was indebted to the bank on account of the balance of other notes, in the sum of $2,943.44, and on said date the bank computed the amount of interest accruing on said ten-thousand-dollar note, and averred that it amounted to $1,381.65, which interest, added to the principal, aggregated $11,381.65.   On and about the said 19th day of February, 1913, the bank requested the defendant to give to it his note for $14,327.05, being the amount of said two items, and on said date, he did give to said bank his note for said amount, maturing the 20th day of May, 1913, on the condition and with the understanding, as more fully stated hereinafter, that he was to pay said bank that portion of the note represented by the $2,943.44, which he owed said bank, and that the remainder of said note, to-wit, $11,381.65, was in lieu of the Kern ten-thousand-dollar note, and should not be paid by him, but should be paid out of the collateral, to-wit, the ten-thousand-dollar note of Kern, secured by deed of trust on

the Macon County lands, and the twenty-thousand-dollar note secured by deed of trust of Kern, given on the said Cameron County lands, both of which notes the bank then held as collateral security for the balance of the $14,327.05 note, after deducting the part thereof owed by defendant, to-wit, $2,943.44.

"13.    Defendant says that on June 30, 1913, he remitted to the bank, four thousand dollars, and out of that sum the bank paid the $2,943.44 (together with interest) which was owing to it by the defendant and included in the $14,327.05 note, and retained the remainder for the use of the defendant; that such remittance was made at the request of the bank and for its accommodation, and that thereafter, at the request of the bank and for its accommodation, the plaintiff remitted to the bank various sums of money which the bank credited to said defendant, and on each occasion when he remitted money to the bank, the $14,327.05 note was renewed, the amount of said renewal being reduced by the amount of credit which the bank gave on account of remittances received from Laughlin, until said note was, on April 26, 1918, renewed for three thousand dollars, the same being the note sued upon in this case.

"14.    The defendant states that at and before the date when he signed the note for $14,327.05, the bank and its president, B. F. Edwards, stated to him that they, the said Edwards and the said bank, were being severely criticized by the shareholders of the bank, and some of the directors, and the bank examiners, on account of the long delay in realizing on the obligations of the said Kern, and that the criticisms had produced great embassassment to the bank and said Edwards, and that he, the said Edwards and the said bank, therefore desired to change the form of obligation so that it would not appear so stale and overdue, and to that end the bank and said Edwards requested defendant to give his note to the bank to cover the amount he owed it individually, and also, in lieu of the amount represented by the Kern note, upon which he

was endorser, and to pay, as soon as possible, the amount really due from said Laughlin, and to renew, from time to time, the note taken in lieu of the obligation of Kern, and at each renewal, to remit to the plaintiff certain sums of money of which the plaintiff would keep strict account, and to continue this course of dealing until such time as the bank could realize upon the deeds of trust held by it on the Cameron County lands, and said bank and said Edwards stated that the same understandings and agreements entered into between the defendant and the bank and said Edwards at the time when the note of February 6, 1908, was endorsed, and at the time when the note of ten thousand dollars, dated October 27, 1910, was endorsed (all of which has heretofore been alleged herein), would be continued and would apply to that part of the $14,327.05 note, representing the Kern indebtedness, which defendant would sign, and to any renewal thereof, and that any sums of money which defendant remitted to the bank at the time said note might be renewed, over and above what he really owed as aforesaid, would be held for the use and benefit of the defendant, and repaid to him with interest, as soon as the collateral could be realized upon, and the bank and said Edwards, at that time, warranted, covenanted and guaranteed that it held a mortgage of forty thousand dollars on lands of Kern which mortgage was of great value, and that the Cameron County deed of trust for twenty thousand dollars was a first deed of trust, good and collectible, and was of the value of twenty thousand dollars, and was owned by the bank and could be collected by the bank, and when so collected, the first money arising therefrom or from the forty-thousand-dollar deed of trust would be used to pay back to Laughlin any sums of money that he might remit to the bank, and to take up the balance, if any, of the Kern indebtedness represented by the $14,327.05 note, or any renewal thereof, and further, again covenanted and agreed to indemnify defendant against any loss he might sustain by reason of having signed said note or

any renewal thereof, or by reason of having remitted to the bank any money at the time said note was renewed.

"15. Defendant says that he relied upon each and all the agreements, representations and warranties above set forth, and because of and on account of so relying he, on the conditions before stated, endorsed and delivered for the accommodation of the bank, the two ten-thousand-dollar notes, dated February 6, 1908, and October 27, 1910, and signed the note of February 19, 1913, for $14,327.05 and each renewal thereof, and remitted to the plaintiff on or about the dates when the last mentioned note was renewed, the sums of money hereinabove referred to in this pleading.

"16. Defendant says that the said bank broke, breached and violated the conditions, representations, guaranties and warranties above set forth, in the following particulars, to-wit:

"After obtaining from the defendant the release of the deed of trust dated February 6, 1908, the bank allowed the said Kern to dispose of a large part of the land covered by it, to-wit, about four hundred acres, of great value, and failed and neglected to take from said Kern a deed of trust on twelve hundred acres of land in Macon County, subject to two prior deeds of trust, aggregating forty thousand dollars, as agreed, but, on the contrary, took from said Kern, without the knowledge or consent of defendant, a deed of trust dated October 27, 1910, on only 374.25 acres of said twelve hundred acres, all of which 374.25 acres (together with other lands), were subject to prior deeds of trust aggregating forty thousand dollars, and had no equity of any value, and on the remaining lands in said twelve hundred acres the bank took another deed of trust for forty thousand dollars, dated October 27, 1910, given at request of the bank to its cashier, W. B. Cowen, and assigned to the bank, which last named deed of trust was taken to secure indebtedness of Kern to the bank, other than said ten-thousand-dollar note endorsed to the bank by Laughlin.

"That the forty-thousand-dollar deed of trust was

of no value and the deed of trust on the Cameron County land was not a first mortgage on two hundred acres, but covered one hundred acres only, and said one hundred acres were subject to an encumbrance or vendor's lien, in the sum of seven thousand dollars, which was prior to the deed of trust held by plaintiff, and that said land was not of the value of thirty thousand dollars, but was worth not to exceed six thousand dollars, and that the vendor's lien aforesaid was adjudged prior to the bank's deed of trust and was foreclosed and the land sold on or about ——, 19—, for less than seven thousand dollars, and said note and deed of trust were utterly worthless and of no value, and neither plaintiff nor defendant ever received anything on account of said twenty-thousand-dollar deed of trust, or on account of any collateral.

"17. Defendant says that he remitted to the bank large sums of money aggregating over eight thousand dollars, and incurred expenses in a large sum, on account of the matters and things herein alleged, and the plaintiff has failed and neglected and refused to re-pay to defendant the sums so remitted and expended, all of which have been a loss to the defendant, and the premises considered, defendant says plaintiff is not entitled to recover on said note, and he prays judgment for his costs in this behalf laid out and expended.

COUNTERCLAIM.

"18. Defendant, for counterclaim against said bank, repeats by reference, all the allegations contained in paragraphs 2 to 16, inclusive, and by such reference, pleads said paragraphs as part of this counterclaim.

"19. The defendant further states that on or about January, 12, 1916, the bank still insisted that the Cameron County twenty-thousand-dollar deed of trust was of a value largely in excess of the amounts defendant had remitted to the bank, and of the balance claimed to be due on the note, and then and there, to defendant, and in his presence, repeated, ratified and adopted the representations, statements and covenants heretofore set forth

herein, and agreed to be bound by them and to carry them out, and in consideration thereof, requested defendant to foreclose said mortgage, and delivered the same to him under the agreements aforesaid, and as evidence of, and in confirmation of, the said previous agreements and understanding, the said bank made a memorandum in writing of same, and endorsed it upon the papers relating to said matter, and said memorandum is to the effect that the bank would pay the defendant the first ten thousand dollars realized from the sale of the said Cameron County property, and any balance over said ten thousand dollars should be paid to the bank and applied on the balance unpaid on said note, which balance then was sixty-five hundred dollars. A copy of said memorandum is hereto attached and made part of this pleading, and marked 'Exhibit A.'

''20. That it was, on or about January 12, 1916, covenanted and agreed, by the bank, that defendant, in consideration of his undertaking to foreclose said mortgage on the Texas lands, should be re-paid by the bank, all expenses incurred by him in the matters of foreclosing said deed of trust, and that pursuant thereto he employed counsel in Texas to file and prosecute said foreclosure suit and paid said counsel a reasonable fee, to-wit, three hundred dollars, for performing said services, and defendant also incurred and paid other expenses accruing on account of said foreclosure, including railroad fare to and from Texas, aggregating at least two hundred dollars; that such proceedings were had in said case that the deed of trust or mortgage of the bank was held to be subject to a prior vendor's lien for seven thousand dollars, which exceeded the value of the property and nothing was realized from said deed of trust or from said fore-- closure, and defendant says the plaintiff is indebted to him in the sum of five hundred dollars, for money paid and expenses incurred in prosecuting said action of foreclosure.

"21. Defendant further says that from November 25, 1913 to April 24, 1918, the bank received from him, on the following dates, the following sums of money, to-wit:

| | | |
|---|---|---:|
| "Nov. 25, 1913 | .................. | $1,083.33 |
| Feb. 26, 1914 | ................. | 135.00 |
| June 3, 1914 | ................. | 645.50 |
| Aug. 28, 1914 | ................. | 631.75 |
| Feb. 19, 1915 | .................. | 617.75 |
| June 19, 1915 | .................. | 644.90 |
| Sept. 30, 1915 | .................. | 633.47 |
| Jan. 24, 1916 | ................:... | 624.20 |
| May 16, 1916 | .................. | 613.85 |
| Sept. 25, 1916 | ................. | 601.66 |
| Jan. 22, 1917 | .................... | 590.00 |
| May 25, 1917 | .................... | 583.33 |
| Sept. 24, 1917 | .................. | 571.17 |
| Feb. 19, 1918 | ................. | 547.60 |
| Jan. 24, 1918 | ................. | 45.60 |

"Total,  .... $8,569.11

"22. The defendant further says that on February 19, 1913, the bank computed the interest on the Kern ten-thousand-dollar note, which defendant had endorsed and delivered to the bank, at $1381.65, and said sum, plus the ten thousand dollars of principal, was incorporated in the note of $14,327.05, given on that date, and the interest at six per cent, on said $11,381.65, from February 2, 1913, to August 27, 1913, amounted to $356.57, making the total interest accrued on said note, to August 27, 1913, the sum of $1738.22, and on February 19, 1913, and August 27, 1913, and on other times between said dates, the bank received of defendant the said sum of $1738.22 and applied it as a credit on said interest.

"23. Defendant further says that the balance unpaid on said $14,327.05, on August 27, 1913, was the sum of ten thousand dollars; that on September 29, 1913, said ten-thousand-dollar note was renewed for the principal sum of $10,083.33 (the $83.33 representing interest there-

on), and on November 25, 1913, the plaintiff received from defendant $1083.33, and said note was on November 25, 1913, renewed for the principal sum of $9,135, and that each time thereafter, from November 25, 1913, to and including February 24, 1918, when the sums of money above set forth were received by the bank, it applied same as a credit on the said note, and in each instance a renewal note was given for the balance unpaid, the note sued upon being the last renewal note.

"The defendant therefore says that the bank is indebted to him as follows:

"For outlays on and after Jan. 12, 1916, in the matter of foreclosing Texas deed of trust or mortgage .................. $    500.00

"For money had and received by the bank from the defendant on the dates heretofore stated, and by said bank used to take up the interest to February 19, 1913, accruing on the Kern note of ten thousand dollars ......................... 1381.65

"For money had and received by the bank from the defendant on the dates heretofore stated, and used by the bank to take up the interest on $11,381.65, from February 19, 1913, to August 27, 1913, at six per cent (the principal on which said interest is computed being the amount of the Kern note plus interest accruing up to February 19, 1913) .............. 356.57

"For money had and received from defendant on the dates heretofore specified, and used by the bank to reduce the principal indebtedness, the total whereof, as heretofore shown, being ................ 8569.11

"Total ......................... $10,807.33

"Defendant says that all said sums of money were received by the bank from the defendant for its accommo-

dation, and were obtained from the defendant because and on account of the representations, covenants, promises and guaranties heretofore set forth herein, upon all of which he relied; that the plaintiff, as heretofore alleged, has not kept or performed the same, but has breached the same in all the particulars heretofore set forth; that the bank did not hold the collateral which it alleged it held, nor was the collateral which it held of any value, and the money so received by the bank from the defendant cannot be made out of the said collateral, nor can it be recovered from any other person, and that by reason of the premises, defendant says he has suffered loss in the sum of $10,807.33, for which sum, together with six per cent interest from the dates when said bank received said moneys, and for his costs in this behalf laid out and expended, he prays judgment of the plaintiff.''

The exhibit pleaded in the answer and counterclaim reads:

''EXHIBIT A.

''January 12, 1916. The mortgage securing this note for $20,000 is being foreclosed by Judge Henry D. Laughlin under agreement with this bank, whose appearance as party plaintiff, has also been entered at Brownsville, to permit the first $10,000 realized from the sale of the property to be paid to Judge Henry D. Laughlin, the balance to be paid to the bank for application on the indebtedness of Kern. The files on this matter are in the office of G. L. Edwards, indexed Laughlin v. Kern.''

The reply sufficed to put in issue all matters pleaded by defendant, both by answer and counterclaim, and emphasized the fact that all that Laughlin did was for the accommodation of Kern, and not for the accommodation of the bank.

The case hinges largely upon the sufficiency of defendant's pleaded facts, because if they are sufficient in law to show a good defense to the note sued upon, and a good counterclaim, there is evidence in the record from which the jury could have found as they did find. It is

clear that Laughlin did not get a cent when he indorsed
the note for ten thousand dollars of date February 6, 1908.
It is also clear that, although this note was secured by a
second deed of trust, the security was ample to make it
good had it been protected. Laughlin says that he took
this note from Kern at the instance of the bank, and for
the accommodation of the bank, and indorsed it over to
the bank, for its accommodation pure and simple. For
two years or more this note was held and no interest was
demanded of Laughlin, or paid by him, and in 1910 a new
note was made for $10,000 in lieu of the old, for the same
purposes and indorsed over in the same manner. This
note was to have been secured by a third deed of trust on
one thousand two hundred acres of Macon County land,
upon which there were to have been prior incumbrances
for $35,000 and $5,000, or $40,000 in all. Laughlin did
not get a cent for the act of indorsing over this note. He
says that he did it all for the accommodation of the bank
and its president upon the assurances of the bank as to
the securities held by it. The third note was the out-
growth of the note of 1910, except that in it Laughlin in-
cluded $2,943.44 of his own indebtedness to the bank, thus
making the third note of date, February 17, 1913, the
aggregate sum of $14,327.05. That the bank and its presi-
dent were having trouble over the condition of its paper
during these times is made clear. Laughlin says that this
note and all of its renewals were without consideration,
and made to accommodate the bank in its efforts to satis-
fy bank examiners. He does not claim that $2,943.44 of
it was without consideration, but this sum he says was
more than paid the June following, and that all other
payments were made for the accommodation of the bank,
and with the understanding that he was to have them
later returned to him with interest. Such outlines the
case.

I. Just a little acrimony seems to have crept into
the trial of this case, especially between Mr. Edwards,

former president of plaintiff bank, and the defendant, Judge Laughlin. Their spars at each other were fairly equally balanced, and their testimony exceedingly contradictory. The tenor of the one was that Laughlin was an accommodation indorser, but was such for Kern and not the bank. The tenor of the testimony of the other was to the effect that the indorsement of the first note, and all others, was at the solicitation of Edwards, the president of plaintiff bank, and for the accommodation of the bank. Laughlin's testimony, whether true or false, was explicit to the effect that all the notes were given and payments made upon the 1913 note, were for the accommodation of the bank and its then president, who seems to have been in trouble both with the Government agencies, and with his own stockholders. It suffices to say that he was shortly deposed, and no doubt the large Kern indebtedness (alleged to be $100,000 or more) was a prime factor in this event. When pressed upon many points as to the understanding between Judge Laughlin and himself, as agent and chief officer for the bank, Mr. Edwards was driven to the time-honored exigency of saying that, "I don't remember." His testimony is punctuated with such answers upon material matters. But all this is adrift from the real issue, because this case was tried as a suit at law, and the credibility of the witnesses was for the jury, and that body seems to have believed the alleged unreasonable testimony of the defendant. It is not for this court to determine the weight of the evidence, but if there was substantial evidence, its weight and credibility were for the jury, and their finding is binding here. Whether the evidence is sufficient in law to show a valid defense, or a valid counterclaim, is a question for this court, which we discuss later. What we now rule is, that the finding of the jury precludes us as to the dispute between these two witnesses, upon the question as to whether or not Laughlin was doing what he did to accommodate the bank or to accommodate Kern. This finding was to the effect that

Appellate Practice.

all done by Laughlin was for the accommodation of the bank, and not for Kern. Behind this finding we are not permitted to go, because we would be trespassing upon the province of the jury. Both the weight and credibility of the evidence is usually for the jury, and there is nothing in this case to take it out of the general rule. But the evidence itself, and the finding thereon, may not suffice to show a defense to the action, or a valid counterclaim, and this question is with us.

II.    Plaintiff moved that the cause be referred to a referee, under the statute covering compulsory references. This motion was denied, and the question is urged here by the brief of appellant. The facts are so fully pleaded, that we may well refer to the pleadings. Reference. These pleadings do not show such a long and complicated account, as to authorize the trial court to compel a reference. The items of account are comparatively few, and the real issues were elsewhere. In such situation the trial court was right in denying a reference. [Ice Co. v. Tamm, 138 Mo. l. c. 389-90; Browning v. N. M. Ry. Co., 224 S. W. 748.]

As suggested in Browning's case the real issues are not involved in the items of the account, but as to the contract out of which the items grew. In the case at bar there is but little dispute as to the few items of account, if the alleged contracts out of which they grew were valid and binding. In fact plaintiff's books show most of the claimed items, and the liability of the plaintiff therefor is dependent upon the contracts. There was no error in refusing a reference under the cases, supra. This disposes of the first assignment of error made by the appellant. There are some six formal assignments of error, but only four of them are briefed. Others will be taken as abandoned.

III.    The second briefed assignment of error reads: "The court erred in permitting Laughlin to testify that at the time he indorsed the Kern notes and at the

time that he took up the indebtedness represented there-
by, by giving his own demand, collateral, promissory note,
he had a verbal understanding with the bank
that he was not to pay the Kern notes ac-
cording to his endorsement or to pay his own
note given to the bank in discharge of his
endorsement, according to his contract in writing to do
so expressed in his own note. To permit him to do so
was to violate that fundamental rule of evidence which
denies to a party the right to contradict, impeach, vary
or modify the terms of a written agreement.''

Parol Proof:
Accommodation
Indorsement.

It will be noticed that this assignment covers the
whole list of notes and renewals given by Laughlin, or
indorsed by Laughlin. It overlooks the fact that the an-
swer in this case is explicit upon some of the matters (not
explicit) in St. Louis Union Trust Co. v. Laughlin, 254
S. W. 844. That case covered much of the field covered
in this case. By this we mean it covers dealings with St.
Louis Union Trust Company as connected with R. H.
Kern, the real debtor in this case. That case covered
these three alleged defenses:

''(1) That defendant indorsed the note for the ac-
commodation of the plaintiff; (2) that he was induced to
indorse it by means of untrue representations made by
plaintiff's officers as to collateral then held to secure the
payment of the note; and (3) that he indorsed the note
in consideration of a promise on the part of plaintiff that
it would obtain from the maker certain additional specific
collateral security, which promise it failed to keep.''

They are much the same as we have here, but the
answer in the instant case (set out in full) shows that the
pleader made good in pleading all the defenses. In the
St. Louis Trust Company case we ruled that the plea of
accommodation indorser was good, and it must be so
ruled in this case. Under that case it must be further
ruled that the second alleged defense in that case, shown
by the excerpt, supra, is well pleaded in this case. In
fact under St. Louis Union Trust Co. v. Laughlin,

supra, all the defenses in this case are well pleaded. Learned counsel may have followed our ruling, supra.

Laughlin testified (which is covered by his pleadings) that the bank requested him to indorse the first note ($10,000 note of 1908) as an accommodation to it. The bank prepared both the note and the deed of trust. To all the facts of this transaction Laughlin testified, and the point made, supra, is that this and other portions of his testimony was and is incompetent. The assignment covers more than this particular transaction, but we will take them up separately. The point made is that in the face of his written indorsement, he could not orally testify that it was given for the accommodation of the bank, rather than for the benefit and accommodation of Kern, who was largely indebted to the bank.

That Laughlin was competent to testify as to his agreement as an indorser has long been settled in this country, and in England. Originally the English doctrine was contra, but later cases changed the rule. [Davis v. Brown, 94 U. S. l. c. 426.] The modern rule is thus stated in the Davis Case, supra:

·"Be that as it may, it has led those courts which, on considerations of commercial policy, adopted the rule of Walton v. Shelley, to qualify the rule, so as to limit its application strictly to cases arising on negotiable bills and notes, and to cases where the transaction affecting the validity of the paper was not between the parties in suit. *The holders of commercial paper, who enter into agreements or transactions with the makers or indorsers, affecting its validity or negotiability, cannot invoke protection against the infirmity which they have aided to create. There are no considerations of commercial policy which can exclude the parties in such cases from testifying to the facts.*"

Note that the rule covers *indorsers* as well as makers of accommodation paper. Persons who make accommodation paper cannot spread upon the face of it the fact that it is accommodation paper. In would serve no useful

305 Mo.—3.

purpose in that situation. Of course if accommodation paper passes to the hands of innocent parties, we have a different rule. But, where as here, the paper remains as between the two contracting parties, the failure of consideration, and the character of the paper may be shown by parol. The consideration of a note is always subject to proof as between the parties to the contract. So also the fact as to whether or not the note or the indorsement thereon is for the accommodation of another, is likewise subject to the same kind of proof, as between the original parties. Such has been the course followed in cases from this State, and elsewhere. [Chicago Title & Trust Co. v. Brady, 165 Mo. 197; Woodbury v. Glick, 151 Iowa, 648; First National Bank v. Felt, 100 Iowa, 680; Ruvenacht v. German-American Bank, 122 N. E. l. c. 470; Garfield National Bank v. Colwell, 57 Hun (N. Y.) 169; Higgins v. O'Donnell, 68 Hun (N. Y.) 100, approved in 140 N. Y. 620; Daggett v. Whiting, 35 Conn. 366; Messmore v. Meyer, 56 N. J. L. 31; Rea v. McDonald, 68 Minn. l. c. 191.]

In all these cases the trial courts heard the oral evidence upon the question as to whether or not the party was an accommodation maker or indorser. In the Rea Case, supra, 68 Minn. l. c. 191, it is said, "For the inquiry always is, To whom did the maker of the paper loan his credit, as a matter of fact?" In that case the maker made a note to a bank as payee, but for the accommodation of another. The maker of the note neither owed the bank nor the other party. He got nothing from either for his note. It was contended that as the bank was the payee, it was the party accommodated, but the court heard the oral testimony, and determined that the bank was not the accommodated party, and permitted a recovery in its behalf.

In this case, according to the finding of the jury, the bank asked Laughlin to permit it to get this first note and deed of trust from Kern to him, that he might indorse it over to the bank for the accommodation of the bank.

Laughlin simply lent his credit to the bank by this indorsement, and did it to accommodate the bank, then being harrassed by examiners about the condition of Kern's paper. It was proper to show by parol evidence that Laughlin was a mere accommodation indorser.

What has been said about the note of 1908 (the first note) applies with equal force as to the note of 1910. If the first indorsement was a mere accommodation to the bank, the indorsement of the second note is also such an indorsement under the proof. Kern was not indebted to Laughlin and Laughlin was not getting a red cent for the notes in which he was the payee. But if the evidence was competent, as we have said, the finding of the jury forecloses the fact that these indorsements were made for the accommodation of the bank, and not otherwise. This brings us to the note of 1913, and of this matter next.

IV. We now reach the note of February 17, 1913, for $14,327.05. Under evidence which we rule to be competent the jury found that there was no liability upon the part of Laughlin upon either of the $10,000 notes. So that on the 17th of February, 1913, Laughlin was not indebted to the bank upon any account, except a sum of $2,943.44. The bank, according to the testimony of defendant, wanted further accommodation, in that it desired for reasons stated in the answer and counter-claim and shown by the evidence, to have its accommodation in the shape of a note direct to it and to give public evidence to the bank examiners that it was collecting up the Kern indebtedness; it asked this new note of Laughlin's be made to cover not only his debt of $2,943.44, but also $11,381.65 on account of the valueless obligation on the note of 1910. It also wanted payments from time to time, so as to show that it was in good faith gathering up the Kern indebtedness. Laughlin accepted the offer of the bank to thus accommodate it, but with the understanding that whatever accommodation he granted by way of payments

*Part Payment by Indorser.*

should ·be repaid to him with interest.    Whether or not this note of 1913 was for the accommodation of the bank was just as much the subject-matter of oral proof as was the. accommodation indorsements which we have just discussed.    The consideration of a note is always a subject-matter of proof, and an accommodation note is but one given without consideration, and given to accommodate the person to whom given.    As between the two parties to the contract (as here) all the facts can be shown, as we have ruled, supra.    For $11,381.65 of this $14,327.05 note there was absolutely no consideration under defendant's evidence and the finding of the jury thereupon.    In June, 1913, Laughlin made a payment of $4,000, which more than covered the valid portion of this note.    Any renewals after this date were purely accommodation notes, without consideration, and as between the parties, unenforceable.    The $3,000 note sued upon was the last one of these renewal notes.    Under the facts shown (and properly shown as we have ruled, supra) the jury was authorized to find as it did.    That is, to find for the defendant as to his liability on such note.    It was a simple question as to whether or not the jury believed the evidence introduced by plaintiff, or the evidence introduced by defendant.    Such body seems to have believed the defendant, and the finding is binding upon us.

Another theory of defense was that plaintiff misrepresented to defendant certain securities which it held from Kern by way of liens upon land in Macon County, Missouri,. and in Texas.    That defendant was induced to sign the notes by reason of such misrepresentations and signed the same in reliance thereon, and of the truth thereof.    These securities were to be held by the bank to make Laughlin safe.    The record contains evidence sufficient to have this theory of the case submitted to the jury, and its finding concludes us.    The defendant presented its two theories of the defense to the note sued upon, and its counterclaim, in the following three instructions:

"1.    If you find and believe from the evidence that

the defendant signed the notes sued on, and also the note indorsed or signed prior thereto at the request of the bank and for its accommodation, then you should find for the defendant on the notes and also find for the defendant on his counterclaim.

"2. If you believe from the evidence that prior to February 6, 1908, one Robert Kern was indebted to the bank and that on or about February 6, 1908, Robert Kern executed a note for $10,000 payable to H. D. Laughlin and secured the same by a second deed of trust on 1851.75 acres and that H. D. Laughlin as surety for Kern indorsed said note and delivered it to the bank;

"And if you further believe that in 1910 the president of the bank solicited and requested the defendant H. D. Laughlin, to release said deed of trust and to indorse and deliver another note signed by Kern for $10,000 in lieu of the first;

"And if you further find and believe from the evidence that at that time the president of the bank stated to Laughlin that the new note would be secured by a deed of trust on one thousand two hundred acres of land in Macon county, Mo., subject to two prior deeds of trust, one for $35,000 and the other for $5,000, and further stated that the bank would also secure and hold a first deed of trust for twenty thousand dollars on two hundred acres of land in Cameron County, Texas, and would not release the deed of trust on the 1851.75 acres of land until it had obtained possession of the new ones mentioned, and that each of said deeds of trust would be held as collateral security to save defendant from loss on account of his having indorsed said note, and, if you further believe that the president of the bank stated that said deeds of trust were of sufficient value to fully protect defendant against loss, and if you further find that H. D. Laughlin indorsed said $10,000 note because and on account of the statements of the president of the bank;

"And if you further believe that in 1913, the bank requested the said H. D. Laughlin to execute to it a note

payable directly to the bank to cover the amount of the $10,000 note and interest then accrued, and at that time the president of said bank stated to him that the bank had the $10,000 note and deed of trust on the Macon County land and the $20,000 deed of trust on the Cameron County land and would hold the same to protect the said Laughlin against loss on account of his signing said note, and that deeds of trust were amply sufficient to protect Laughlin from loss, and that said Laughlin signed the note because and on account of said statements, and that the note in suit is a renewal of the original $10,000 Kern note, and you further find that the bank did not have a deed of trust which was a first lien on the Cameron County lands, and did not have such deed of trust on one thousand two hundred acres of land in Macon County, Mo., as its president stated it had, if you find he did so state, and that the deeds of trust on the Macon County lands and the Cameron County lands were of no value, if you so find from the evidence in the case, then you will find for defendant Laughlin, on plaintiff's cause of action.

"3. If under the evidence you find the facts to be as set forth in defendant's instruction numbered 2, or if you find the facts to be set forth in defendant's instruction numbered 1, and if you further find that defendant did not know that the collateral described in said Instruction No. 2 was of no value until some time in 1916 or 1917, and that prior to obtaining such knowledge, he, the said Laughlin, delivered or transmitted to plaintiff certain sums of money, and the plaintiff received said sums of money and used them to reduce the amount it claimed was owing to it on account of the Kern debt and interest accrued thereon, then you should find for defendant on his counterclaim, and assess the amount of his recovery at a sum equal to the total amount of money so paid by defendant to plaintiff, less $3,043.44 which plaintiff received from defendant after February 19, 1913, and before defendant became aware that said deeds of trust were of no value, and you will allow defendant interest on the sums so found from April 8, 1918, to this date."

V.  As will be noted the last instruction covers the counterclaim, but by reference includes instructions one and two.  The sum of $3,043.44 mentioned in this instruction refers to the $2,943.44 covered by the note, which was in fact Laughlin's debt, and which was covered by a $4000 payment in June.  The difference covered the interest from February, the date of the note to June following, the date of the payment as we conclude.  It is conceded by appellant's counsel that Laughlin made payments aggregating $11,327.05, which payments ran from June 30, 1913, to February 11, 1918.  There was $1500 in three payments in 1917, and $500 in one payment in 1918.  It is the evidence of an officer of the bank.  Out of this sum would have to be taken the $2,943.44 and interest thereon, from February to June.  The counterclaim covers more items and a greater aggregate amount than this admission of counsel.  Under the admission of counsel the aggregate payments after deducting the bona-fide sum of $2,943.44 and interest would be $8,283.67, or just two dollars more than the jury allowed by the verdict which we have quoted. The jury allowed $8,381.65, and then added interest in the sum of $2,011.59, making the total verdict of $10,393.24. The aggregated sum of $8,569.11 was claimed by defendant as advanced to plaintiff on the alleged principal of said note, and interest is alleged to have been paid in the further sums of $1,381.65 and $356.67.  There was also a claim of $500 as expenses in a Texas foreclosure proceeding.  The total amount claimed by defendant was $10,807.33, and interest thereon at the rate of six per cent.  The jury saw fit to separate its verdict, so as to show the finding of $8,381.65 as the principal sum of the counterclaim, and $2,011.59 as interest.  Defendant has not appealed, and so far as he is concerned we are bound by this verdict. Under the admission of counsel for plaintiff, borne out as said above by a witness for the bank, this finding as to the principal sum is well sustained by the evidence.  The books of the bank, as testified to by

**Excessive Verdict.** *(margin heading)*

Harry S. Weigle, show that Laughlin paid into the bank before the execution of the $3,000 note sued upon herein, the sum of $11,327.05, and deducting from this the money actually owed by Laughlin ($3,043.44) there was left the sum of $8,283.61 paid by Laughlin for which there was no earthly consideration, and which must be considered as advancements for the accommodation of the bank under the facts testified to by a witness for defendant, and found to be true by the jury. The principal sum of this verdict is more than within the evidence of the case. This leaves for consideration the question of the interest. This is a separate finding and can and will be dealt with separately.

VI.   When we said in a previous portion of this opinion that the specific assignment of errors were six in number, and that only four of them were briefed, we overlooked an additional brief by other counsel for appellant.

Excessive
Interest.

There are no specific assignments of error in this brief. By this we mean that there is no sub-head entitled, "Assignment of Errors," as is customary and usual in briefs, and as required by our rules. There is, however, a sub-head of "Points and Authorities" in such brief, and the points made therein are sufficient to constitute assignments of error under repeated rulings of this court. Among these errors it is charged that defendant's instruction three is error because it authorized the jury to find interest from April 8, 1918.   According to the abstract of record this suit was filed August 15, 1918.   In one of the briefs for the appellant it is asserted that the counterclaim was filed on April 8, 1919.   Counsel then proceeds:

"Evidently defendant's counsel, and the court in giving this instruction, considered the filing of defendant's counterclaim as a demand and intended to authorize the allowance of interest from that date, but in naming the date erroneously wrote April 8, 1918, instead of April 8, 1919."

National Bank of Commerce v. Laughlin.

There can be no question that the filing of the counter-claim was such a demand as would entitle the calculation of interest from that date. The case went to trial on April 11, 1922—three years and three days after demand. Calling the time three years and calculating interest at six per cent on the principal sum found ($8,381.65) the interest per year is $502.899. If we multiply this by four, as the jury evidently did, because the instruction told them to count interest from April 8, 1918, instead of April 8, 1919, we have, as interest, $2,011.596. The jury found $2,011.59, and it is evident that they followed the instruction. They cut off the six-tenths of one cent. But grant that the instruction was in error by one year, we have all the data from which to require a *remittitur*. We would only have to compel the defendant to remit $502.899 to have the correct amount of interest. No demand was shown except by the filing of the counterclaim, and it is clear that the defendant was proceeding upon this theory of a demand. This because there is no reason suggested by the record for making April 8, 1918, the date from which to commence the calculation of interest. This was evidently a mistake made in drawing the instruction, but it can be easily remedied here as suggested above. This because the jury has thoughtfully separated the principal and interest.

**Demand.**

**Remittitur.**

It is urged in one of the briefs that some of the items of the account in the counterclaim are barred by the Statute of Limitations. The Statute of Limitations is pleaded in the reply, but plaintiff abandoned that theory of the case in its requested instructions. No instruction upon that theory was requested. So even if an item or two had been barred (a theory of the law to which we do not concede), yet this theory of the case was abandoned by plaintiff when it came to requesting instructions.

**Limitations.**

But in addition, Laughlin testified that these sundry payments were to be put into a savings account for him

by the bank. In this we have an open running account by a express agreement of the parties. On the other hand the advances of money at intervals to the bank for its accommodation, and without a *quid pro quo,* would by implication create an open running account, so that the last item would draw to it all those which chance to fall beyond the period of limitations. [Thompson v. Brown, 50 Mo. App. l. c. 320, and cases cited.] One of the cases cited is Boylan v. Steam Boat Victory, 40 Mo. l. c. 251, whereat it is said:

"Where it is specially agreed or impliedly understood between the parties that the account is to be kept open and continued as one and the same continuous transaction and course of dealing, the account will be considered as one continuous account and one demand. [Madison Co. Coal Co. v. St. Bt. Colona, 36 Mo. 446.] There was evidence before the court from which it might reasonably be inferred that such had been the understanding of the parties and the real nature of the transaction in this case, and the verdict will not be disturbed on this ground."

This last mentioned case was approved in Fulton Iron Works v. Mining & Smelting Co., 80 Mo. l. c. 269. But as first said, plaintiff did not choose to submit the matter of the Statute of Limitations to the jury, and thereby abandoned this defense, as to the items alleged to be barred. Plaintiff is bound here by the trial theory below.

VII. Complaint is further made as to the giving of instructions one and two for the defendant. All these instructions we have purposely set out, supra. Complaint is also made as to the refusal of two instructions Instructions. · for plaintiff, which were demurrers. One directed the jury to find for the plaintiff upon the note, which amounted to a demurrer to the evidence offered upon the defense as against the note. The other directed the jury to find against defendant upon his coun-

ter-claim. What we have previously said disposes of these two demurrers. The instructions for defendant set out, supra, we think fairly present the law of the case. Complaint is also made on account of the trial court having modified instructions three and five asked by the plaintiff, and giving them as thus slightly modified. An examination of these instructions will show that the plaintiff was not harmed by the slight modifications.

The judgment *nisi* is correct except as to the one year's interest allowed upon the principal which the jury found. The judgment should be modified by reducing the sum total thereof by the sum of $502.90. We make it 90 cents intstead of .899 for convenience of calculation. Deducting $502.90 from the total verdict for defendant of $10,393.24, we have left $9,890.44. Judgment will be entered here in favor of defendant for said sum of $9,890.44 as of the date of the judgment, *nisi,* i. e. April 12, 1922, so that such judgment may draw interest at six per cent per annum from said April 12, 1922.

Judgment of the trial court modified, and judgment entered here as above indicated. All concur.